UNITED STATES of America, Appellee,

v.

James C. TALBERT, Appellant.

UNITED STATES of America, Appellee,

v.

Roger Allen PIERCE, Appellant.

UNITED STATES of America, Appellee,

v.

Raeford Melano CAUDLE, Appellant.

UNITED STATES of America, Appellee,

v.

James C. TALBERT, Appellant.

UNITED STATES of America, Appellee,

v.

Joseph Gorrell PIERCE, Appellant.

UNITED STATES of America, Appellee,

v.

Frank Lee BRASWELL, Appellant.

UNITED STATES of America, Appellee,

v.

Pat BRASWELL, Appellant.

UNITED STATES of America, Appellee,

v.

Frank Lee BRASWELL, Appellant.

Nos. 81–5169(L), 81–5269 to 81–5274
and 82–6690.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 11, 1982.

Submitted Jan. 7, 1983.

Decided April 27, 1983.

Steven Kropelnicki, Jr., Asheville, N.C., for appellant Pat Braswell.

Talmage Penland, Asheville, N.C., for appellant Joseph Gorrell Pierce.

Joseph A. Connolly, Asheville, N.C., on brief, for appellant James C. Talbert.

William A. Parker, Asheville, N.C., on brief, for appellant Raeford Melano Caudle.

Bruce J. Brown, Asheville, N.C., on brief, for appellant Frank Lee Braswell.

Robert M. Pitts, Asheville, N.C., on brief, for appellant Roger Allen Pierce.

Jerry W. Miller, Sp. Asst. U.S. Atty., Asheville, N.C. (Charles R. Brewer, U.S. Atty., Max O. Cogburn, Jr., Asst. U.S. Atty., Asheville, N.C., on brief), for appellee.

Frank Lee Braswell, appellant pro se.

Max O. Cogburn, Jr., Asst. U.S. Atty., Asheville, N.C., for the appellee in No. 82–6690.

Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

SPROUSE, Circuit Judge:

We are presented with two separate appeals[1] arising from the district court trial of Joseph Gorrell Pierce, Frank Lee Braswell, Pat Braswell, Roger Allen Pierce, Raeford Melano Caudle and James C. Talbert. The defendants were indicted in March of 1981 and later convicted of conspiracy to use explosives to damage or destroy buildings used in interstate commerce, in violation of 18 U.S.C. §§ 844(i) and 371 (1976). In the first appeal, all six defendants challenge their convictions. The second appeal, which we later discuss and dismiss, involves a separate challenge by defendant Frank Braswell to a district court order.

Two principal questions are raised in the defendants' joint appeal: (1) whether the trial court erred in denying defendants' motions to suppress evidence obtained by a telephone wiretap alleged to have been improperly authorized; and (2) whether the trial court erred in denying the indigent defendants a free transcript of a previous mistrial. We think there was sufficient demonstrated probable cause for the authorization of the wiretap and the court ruled correctly on the suppression motions. *Britt v. North Carolina,*[2] however, mandates that the free transcript should have been provided. We reverse the defendants' convictions on that ground.

In the autumn of 1979, Special Agent Sweat of the Bureau of Alcohol, Tobacco and Firearms (BATF), began an investigation of defendant Frank Braswell after receiving information that Braswell possessed automatic weapons as a gunman for the National Socialist Party of America (Nazi Party). Sweat's first contact and early meetings with Braswell was as an undercover agent posing as a mercenary interested in trafficking in illegal automatic weapons. In the summer of 1980, during a time when an unrelated North Carolina State trial of six Ku Klux Klan/Nazi Party members was underway, Braswell sought advice from Sweat about support for potential terrorist activity by Nazi Party members in retaliation for the expected convictions of the defendants in that trial. Sweat involved Special Agent Jill Arthurs of the North Carolina State Bureau of Investigation at that time, and the two agents offered their services as a conduit for the defendants' escape following their terrorist activities. Thereafter, they met with the six defendants singly and collectively a number of times. The defendants at these meetings detailed their plans to destroy particular buildings and other installations in Greensboro and Guilford County, North Carolina. The undercover agents secretly recorded many of these conversations. The defendants, in late fall of 1980, however, became suspicious of alleged federal investigations of Ku Klux Klan activity in Greensboro and the meetings were discontinued.

Assistant U.S. Attorney J.W. Miller was then requested to apply for an order permitting electronic surveillance of the telephone in the home of two of the defendants, Mr. and Mrs. Braswell. Agent Chapman was the BATF agent in charge of the wiretap operations. The district judge authorized the requested wiretap on November 8, 1980, upon the verified application of Miller and affidavit of BATF Agent Chapman.

The six defendants were tried together—the first trial was held in July of 1981. The information received from the wiretap and from recorders that had been attached to the agents comprised most of the government's evidence. It ended in a mistrial on July 18 after the jury could not agree on a verdict. The six defendants were tried again beginning on September 14, 1981, and all were convicted by the second jury.

I.

The appellants' first complaint with the wiretap authorization is that the judge improperly relied on Chapman's affidavit because it was not verified. Although Chapman signed his affidavit, the affidavit does not indicate that he signed it under

1. We consolidate the two appeals for purposes of disposition.

2. 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).

oath. Chapman's uncontradicted testimony at trial, however, was that he signed his affidavit under oath administered by the judge who authorized the wiretap at the same time Miller verified his application. The record indicates that Miller's application, which is considerably detailed and incorporates by reference Chapman's affidavit, was signed by Miller under oath at the time the wiretap was authorized. We think under these circumstances that the statutory [3] and fourth amendment "oath or affirmation" requirements were satisfied.

The appellants next complain that the application and affidavit submitted to the district judge were not sufficient to establish probable cause for issuing the wiretap order.

An order authorizing or approving a wiretap must be based on a finding of sufficient probable cause to issue the wiretap.[4] The probable cause required for issuance of a wiretap order is the same as that which is necessary to obtain the issuance of a search warrant. *United States v. Falcone,* 505 F.2d 478, 481 (3d Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975); *United States v. Baynes,* 400 F.Supp. 285, 295 n. 17 (E.D.Pa. 1975). When the information contained in the supporting affidavit for a wiretap order comes from an informant, the judge's determination of probable cause must satisfy the standards articulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *See United States v. Weinrich,* 586 F.2d 481 (5th Cir.), *cert. denied,* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979);

*United States v. Fiorella,* 468 F.2d 688 (2d Cir.1972), *cert. denied,* 417 U.S. 917, 94 S.Ct. 2622, 41 L.Ed.2d 222 (1974). Under *Aguilar,* an affidavit cannot support a probable cause determination based upon an informant's information unless it shows: (1) the underlying circumstances from which the informant reached his conclusions; and (2) the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable.

The defendants point out that neither Miller nor Chapman asserted personal knowledge of the events described in their application and affidavit. They argue that the *Aguilar* requirements were not satisfied because Miller's application does not say exactly what agent Sweat told him and Chapman's affidavit does not specifically state that agent Sweat was his source of information.

The affidavits in this case satisfy the standards set forth in *Aguilar.* In his verified application, Miller identified agent Sweat and summarized his discussion with the agent concerning the circumstances of the BATF investigation, and stated that he had examined the attached affidavit of BATF Agent Chapman. Agent Chapman's lengthy affidavit contains numerous detailed and specific references to terrorist plans which the defendants had revealed to agent Sweat. For example, it refers to specific conversations in which the defendants revealed their plans to blow up particular buildings in Greensboro, North Carolina, their plans for obtaining the explosives, and the defendants' plans for leaving the

---

**3.** 18 U.S.C. § 2518(1) provides that:

Each application for an order authorizing or approving the interception of a wire or oral communication shall, under this chapter be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application.

*See also* Fed.R.Crim.P. 41(c).

**4.** 18 U.S.C. § 2518(3) (1976) states that before an order authorizing or approving wire interception may be granted, the court must determine on the basis of the facts submitted by the applicant that:

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

. . . .

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

country following their terrorist activities. It is readily apparent from both Miller's application and Chapman's affidavit that an undercover operation was involved and that the source of information was undercover agent Sweat. *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We find no error in the district court's refusal to suppress the evidence obtained from the wiretap.

## II

■ We have considered the defendants' contentions as to the admission of conspiracy evidence and as to the denial of a judgment of acquittal and find no merit in them. There was no error in admitting the declarations of coconspirators. Fed.R.Evid. 801(d)(2)(E). Sufficient independent evidence of the conspiracy was presented and the trial court made a preliminary determination of admissibility. *See* Fed.R.Evid. 104(a), (b); *United States v. Gresko,* 632 F.2d 1128 (4th Cir.1980); *United States v. McCormick,* 565 F.2d 286 (4th Cir.1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978); *United States v. Jones,* 542 F.2d 186, 203 n. 33 (4th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976).

■ The trial court also did not err in denying the defendants' Rule 29 motions for Judgment of Acquittal. The evidence as a whole taken in the light most favorable to the government, together with all legitimate inferences to be drawn therefrom, could have convinced a rational trier of fact beyond a reasonable doubt that the material elements of the crime of conspiracy had been proved. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v. Anderson,* 611 F.2d 504 (4th Cir.1979).

### III.

We agree, however, with the appellants' contention that the district court committed reversible error when it refused to order the government to provide them with a free transcript of the first trial.

The government's evidence in the first trial included the testimony of two special agents of the BATF, the testimony of two other individuals, and taped conversations. Most of the government's case consisted of tape recordings made in the course of meetings between undercover agents and one or more of the defendants, and the recordings of the wiretapped telephone conversations. All of the defendants testified in their own defense. The government and defense cases at the second trial consisted of generally the same evidence introduced in the first trial.

The mistrial of the first case was ordered on July 18, 1981. The defendants filed a motion in district court on August 5, 1981, seeking a free copy of the transcript of the first trial. The second trial was not scheduled to begin until September 14, 1981. The government, prior to the second trial, obtained the transcript of the testimony of the six defendants. The remaining trial transcript would have included the testimony of the government's witnesses, four of whom also testified at the second trial. These four witnesses included agent Sweat, who identified the defendants, related the details of his meetings with them, and provided the foundation for introduction of recorded conversations. Agent Chapman testified concerning the operation of the wiretap. Ralph Johnson, an official of Colonial Pipelines Company in Greensboro, identified the company's operation as being in or affecting interstate commerce, and Harold Parker, custodian of the records of Explosives Supply Company, testified as to the amount of explosives available at the site which defendants allegedly planned to rob. The government conceded in argument that there would have been no difficulty in having the government's evidence transcribed. The district court, however, denied the August 5 motion for a free transcript, but when the court later discovered that the government had obtained a transcript of the defendants' testimony, it ordered the government to share that with defense counsel.

In *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), the Supreme Court said that a state must pro-

vide an indigent[5] defendant with a copy of the transcript of proceedings which resulted in a mistrial, unless the state showed that the defendant had available to him an adequate alternative. The Court relied on *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), which established the principle that a state must, as a matter of equal protection, provide an indigent defendant with the basic tools of an adequate defense on appeal, when those tools are available for a price to other defendants. While *Britt* involved state proceedings, its rule has been found equally applicable in federal cases under the due process clause of the fifth amendment. *See United States v. Gaither,* 527 F.2d 456 (4th Cir.1975), *cert. denied,* 425 U.S. 952, 96 S.Ct. 1728, 48 L.Ed.2d 196 (1976); *United States v. Acosta,* 495 F.2d 60, 63 (10th Cir.1974).

■ Under the exception established by *Britt,* a copy of the transcripts of a mistrial need not be provided to a defendant to assist in his preparation for the subsequent trial if there is available "alternative devices that would fulfill the same function as a transcript." 404 U.S. at 227, 92 S.Ct. at 434. The Court then noted that "a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." *Id.* at 228, 92 S.Ct. at 434. "A defendant who claims the right to a free transcript does not," the Supreme Court said, "bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." *Id.* at 230, 92 S.Ct. at 435.

In *Britt,* the Court found an adequate alternative under the facts of that case. The trial of the case took place before the same judge and the same counsel in a small town. At oral argument the defendants' counsel conceded that the court reporter was a good friend of all local attorneys who would, at any time, have read back to counsel his notes of the mistrial well in advance

of the second trial if counsel simply had made an informal request. It also became evident at oral argument that petitioner could have obtained from the court reporter far more assistance than that available to the ordinary defendant. 404 U.S. at 229, 92 S.Ct. at 434–35.

The circuit court decisions since *Britt* have interpreted narrowly the "adequate alternative" exception. The Sixth Circuit, for example, in *United States v. Young,* 472 F.2d 628 (6th Cir.1972), stated that it would not suffice to provide the defendant with limited access to the court reporter during the course of the second trial. The court said that *Britt* had hinged upon a concession by the defendant that he had available to him an informal alternative which appeared to be substantially equivalent to a transcript. In *United States v. Jonas,* 540 F.2d 566 (7th Cir.1976), the court held that the availability of the judge's notes and reporter's tapes of the first trial was not an adequate substitute for a transcript. In *United States v. Germany,* 613 F.2d 262 (10th Cir.1979), the trial judge had found that the transcript would be of little assistance to the defendants; that defense counsel took considerable notes during the first trial; that the same counsel would appear at both trials and the two trials were separated by only a few weeks; and that it would take the reporter some time to transcribe her notes. The Tenth Circuit held that all of this was legally insufficient to justify not supplying the defendants with a copy of the transcript of their first trial. *See also United States v. Mullen,* 550 F.2d 373 (6th Cir.1977); *United States v. Baker,* 523 F.2d 741 (5th Cir.1975); *United States v. Acosta,* 495 F.2d 60 (10th Cir.1974).

■ The government argues that the trial court in the immediate case correctly denied defendants' request for a free transcript because it provided the defendants with information substantially equivalent to a transcript of the testimony of the government's witnesses. The United States Attorney maintained an "open files" policy.

---

**5.** Each of the six defendants were found indigent and were appointed counsel for their trials.

Defense counsel had complete access to the results of the BATF investigation. The government correctly contends, that the bulk of the prosecution evidence consisted of the tapes of meetings and telephone conversations. The tapes and their transcriptions[6] were freely available to defense counsel as was a 30 page summary of the investigation. All of this was certainly of great assistance to defense counsel and signifies that the government counsel had no special advantage over defense counsel in preparation for trial.

It must be remembered, however, that although error is pursued under the aegis of the fifth amendment, this is an equal protection concept we consider. If a hypothetical defendant who is financially solvent would decline to pay for the production of a mistrial transcript because it would not assist in preparing his case for a second trial, then theoretically an indigent in the same circumstances would not be denied equal protection if he were not provided a free transcript. Thus gauged, we do not feel the prosecutorial information available to defense counsel qualifies as a *Britt* "adequate alternative."

The first trial in this case was protracted. All six defendants were prosecuted in both trials and at least one defendant was represented in the second trial by counsel who had not participated in the first trial. The transcript of the testimony at the second trial consumes approximately 800 pages, indicating that the evidence at the first trial was about as lengthy. Two months elapsed between the two trials. Any diligent defense counsel would have sought to obtain a transcript of the testimony of the very witnesses who were again expected to carry the government's burden of proving their clients' guilt. To defense counsel, there was value in the transcript beyond that reaped solely from access to government investigative files. The transcript is specific. Possessing it, defense counsel would not have to search through eight bound volumes of investigative material for prospective testimony, and the ready availability of the transcript for impeachment during the

fast pace of a trial would be far superior to that of bulk information which must be searched for impeachment material concurrently with the testimony. This is not to belittle the government's open file policy. The file was obviously of valuable assistance to defense counsel. The transcript, however, provided an additional tool, and certainly a tool that a reasonable defendant would procure in this case if he could afford it. Under these facts, we believe that the items the government provided to the defendants did not constitute an adequate alternative to a copy of the mistrial transcript of the testimony of the government's witnesses.

■ The government contends, nevertheless, that the defendants waived their right to a copy of the mistrial transcript. It is true that absent a showing of good cause for delay, a defendant may waive his right to a copy of mistrial transcripts if he does not timely request them so as to avoid disruption of the subsequently scheduled trial. *See United States v. Johnson,* 584 F.2d 148, 157 (6th Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979); *United States v. Gaither,* 527 F.2d at 458. The government, however, does not argue that the defendants' requests were untimely, but that none contacted the court reporter about any aspect of the trial or pursued other means of obtaining the transcript. This, it argues, shows that the defendants had no genuine interest in the transcript. We find such an argument inadequate to support a finding of waiver.

## IV

■ Finally, we dismiss Frank Braswell's separate appeal. On May 3, 1982, after the defendants appealed their convictions, defendant Braswell filed a motion with the district court entitled "Motion to Stay Proceedings." In his motion, Braswell alleged that Betty Lawrence, a juror at the first trial, had contacted members of the jury in the second trial. He alleged that the United States Attorney used Lawrence as a "means and a mediator to influence the juries in both trials." Braswell asked the

---

**6.** The transcripts of the tapes, however, are not    part of the transcript which defendants sought.

district court to (1) stay the proceedings, (2) declare a mistrial and grant a new trial, and (3) appoint a special grand jury to hear evidence relating to his accusations. The district court denied the motion.

In view of our holdings in Part III of this opinion, the appeal as to the first two requests are moot. The district court's ruling on Braswell's third request is not reviewable. *See* Fed.R.Crim.P. 6(a); *In re A & H Transportation, Inc.,* 319 F.2d 69 (4th Cir.), *cert. denied,* 375 U.S. 924, 84 S.Ct. 266, 11 L.Ed.2d 166 (1963).

### V.

We reverse the convictions of all six defendants because the government did not provide the defendants with a copy of the transcript of their first trial, and remand for further proceedings consonant with the views herein expressed. We dismiss Frank Braswell's separate appeal.

REVERSED IN PART; DISMISSED IN PART.