PER CURIAM:
 

 Appellant William Ronald Jefferies, a Florida inmate, brings this appeal from denial of his petition for a writ of habeas corpus. Fourteen years ago, appellant was tried and convicted for armed robbery and first degree murder. Appellant alleges constitutional error in that proceeding, specifically that he was denied a free transcript of a co-defendant’s suppression hearing. Appellant alleges that the transcript was necessary for effective impeachment of a key witness. Without it, he was denied due process and equal protection. Despite the magistrate’s recommendation of relief, the district court rejected appellant’s claim. It found that appellant had available at least five alternatives to use of the hearing transcript. Consequently, denial of the transcript was not constitutional error. We affirm.
 

 Consideration of appellant’s argument on appeal requires a brief recitation of the facts. In 1972, appellant robbed the Poinciana Lounge in Key West, Florida. In the course of the robbery, appellant shot a lounge patron who later died from the wound. At appellant’s trial, the evidence of first degree murder was based on sub
 
 *1510
 
 stantial circumstantial evidence and the testimony of a co-defendant, John Gallagher.
 

 Gallagher offered the only direct evidence that appellant was the trigger-man at the robbery. He testified that when appellant returned to the getaway car, driven by Gallagher, appellant stated that he thought he had shot one of the patrons. Although this testimony was consistent with Gallagher’s prior statements to the police, it did not allude to the fact that Gallagher had previously sworn these statements were coerced. At his pre-trial suppression hearing, Gallagher stated that he had only given statements incriminating appellant because the police had threatened him with the electric chair.
 

 Appellant contends that if counsel had had a transcript of Gallagher’s suppression hearing, he would have been able to impeach Gallagher’s testimony with his own story of intimidation. Appellant argues that the lack of a transcript was constitutional error because appellant’s counsel had requested transcription of all pre-trial hearings, but the court denied the request. Trial counsel had made the request because he was appellant’s second attorney, appointed after the pre-trial proceedings had taken place but six weeks before trial.
 
 [1]
 

 In evaluating appellant’s contentions, the district court relied on the standard set forth in
 
 Britt v. North Carolina,
 
 404 U.S. 226, 92 S.Ct. 431, 434, 30 L.Ed.2d 400 (1971). Denial of a free transcript to an indigent defendant is unconstitutional only where the transcript is valuable to the defense and no functional alternatives exist. The value of the transcript in this case is apparent. Impeachment of Gallagher's testimony would have weakened a key component of the state’s case for first degree murder, the positive identification of appellant as the trigger-man. Nonetheless, the importance of the testimony and the impeachment should not be over-estimated. There was a great deal of circumstantial evidence placing appellant at the crime, some of it also raising an inference that appellant had fired the fatal shot.
 
 [2]
 

 Given the value of the transcript for impeachment, the district court considered the matter of alternatives and suggested five:
 
 [3]
 

 (1) trial counsel’s consultation with appellant’s previous counsel;
 

 (2) allegations of coercion in Gallagher’s motion to suppress;
 

 (3) prior statements by Gallagher;
 

 (4) pretrial deposition of Gallagher; and
 

 (5) use of funds from the public defender’s office to pay for transcription.
 

 Appellant contends that the record will not support the existence of these alternatives
 
 *1511
 
 and they are all clearly erroneous as findings of fact. We disagree. The first alternative in particular was available to appellant and would have enabled him to impeach Gallagher with Gallagher’s own words.
 

 Appellant’s trial counsel, Richard Payne, could have consulted with prior counsel Henry Coleman to establish Gallagher’s claim of coercion. Contrary to appellant’s assertions, Coleman was not sequestered as a witness during Gallagher’s testimony at the suppression hearing. In fact, Coleman was present and actively participating, making evidentiary objections during Gallagher’s cross-exam. Given this participation, it is extremely unlikely that Coleman would have forgotten the testimony only a few weeks later. Gallagher’s statements were the key to the success or failure of his motion. Regardless of the number of other witnesses at the hearing, counsel would have focused on Gallagher. Coleman in particular would have been familiar with Gallagher’s story since Gallagher had first selected Coleman as his attorney and had raised the matter of coercion with him.
 
 [4]
 

 We recognize that the validity of this transcript alternative cannot rest solely on whether Coleman knew about Gallagher’s claims. Consultation with prior counsel would be feasible only if Payne also knew enough about the case to seek Coleman out. According to Payne’s deposition for the post-conviction proceedings, Payne knew that Gallagher was listed as a potential witness and Payne fully expected him to turn state’s evidence. Furthermore, Payne knew that Gallagher had moved for suppression, therefore, his testimony was vulnerable to a suggestion of coercion. It seems likely that Payne even knew the factual basis for the motion since Gallagher’s statement to the police was in Payne’s case file. The statement was a transcript of Gallagher’s interrogation rather than a narrative confession. At several points, the police emphasized to Gallagher, in very colorful terms, that he was potentially facing a “murder one” charge with heavy penalties.
 
 [5]
 
 In light of all this information, there is no reason that Payne could not have asked Coleman about Gallagher’s specific testimony at the suppression hearing.
 
 [6]
 

 We emphasize that the suggestion of attorney consultation in this case would not force appellant to rely solely on prior counsel’s recollection of testimony. The Supreme Court has stated that defendants should not be at the mercy of counsel’s
 
 *1512
 
 memory.
 
 See Britt
 
 at 229, 92 S.Ct. at 434. In this case, counsel could have used Coleman’s recollection to obtain just the relevant portions of the suppression hearing transcript, rather than making a blanket request for transcripts of all pretrial proceedings. To the extent typed portions could not be obtained, counsel could have requested the court reporter to read some of her notes for use in counsel’s preparation for trial. This course of action was approved in
 
 Britt
 
 as a functional alternative to a typed transcript,
 
 see id.,
 

 [7]
 

 and it would have provided appellant with Gallagher’s own statement of coercion and fear.
 

 We do not concede, however, that functional alternatives are limited to those devices which allow impeachment by a witness’ own words. Such a narrow interpretation overlooks the purpose of providing indigent defendants with free transcripts. Transcripts are given to protect a defendant’s rights to equal protection and due process, more particularly described in this context as the right to present an effective defense.
 
 Cf. Britt, supra,
 
 at 227, 92 S.Ct. at 433 (citing
 
 Griffin v. Illinois,
 
 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)).
 

 Thus, a functional alternative to a typed transcript includes any device which allows a defendant to present an effective defense. In this case, appellant’s trial counsel had such a device on hand: the text of Gallagher’s confession, the third alternative suggested by the district court. Counsel made excellent use of the confession, repeatedly asking Gallagher if he had turned state’s evidence out of fear, and then reading aloud the police’s threatening statements verbatim from the confession.
 
 [8]
 
 This evidence, coupled with the state’s admission that Gallagher was granted immunity, gave the jury a full picture of Gallagher’s motives and credibility. Counsel’s inability to impeach Gallagher with the suppression transcript itself did not deprive appellant of an effective defense.
 
 [9]
 

 For the reasons stated above, we find no constitutional violation and we affirm the district court’s denial of the writ.
 

 AFFIRMED.
 

 [1]
 

 . Appellant was originally represented by Henry Coleman, who later withdrew. Richard Payne, formerly a public defender and subsequently a Monroe County Judge, was appointed to replace Coleman.
 

 [2]
 

 . Testimony of two witnesses placed appellant near the scene of the crime and in the company of his co-defendants just before and after the crimes. A gas station operator testified that he had seen appellant drive into his station shortly before the crimes. Appellant was in a dark, four door Chevrolet with Gallagher and Ellis Windsor, the third defendant. A police officer testified that he saw appellant, Gallagher and Windsor get out of a purple Chevrolet parked in an alley near the Poinciana Lounge, just minutes after the crimes occurred.
 

 Evidence suggesting that appellant was the trigger man came from bar patrons, and from appellant's cousin, Glenwood Hayes. Bar patrons said that the gunman was the taller of the two robbers, although neither one was very tall. Appellant is a bit taller than his co-defendant, Ellis "Shorty Long" Windsor. Appellant also was the source of the pistol used in the robbery. He borrowed it, fully loaded, from his cousin, Hayes, on the evening of the crimes. When he returned it to Hayes, he said that he owed him a round of ammunition.
 

 [3]
 

 . The district court listed as a sixth alternative the fact that appellant’s counsel intentionally chose not to impeach Gallagher. The court seems to have erred in listing this fact as an alternative; it is not the functional equivalent of a transcript. The error is harmless, however, since at least a few of the court’s other suggested alternatives have merit.
 

 [4]
 

 . Gallagher told police on the night he was first questioned and allegedly coerced that Henry Coleman was his lawyer. He relayed the events of questioning to Coleman when he eventually contacted him, although by that time Gallagher had already given a statement. Coleman later declined to take the case because he was under consideration for a county judgeship.
 

 [5]
 

 . The confession included the following "advice” from one of the detectives:
 

 Let me say this, if I can, you [another policeman] told him [Gallagher] Murder One. Maybe he don’t understand what Murder One is. Maybe you should explain that to him. That’s a First Degree Murder Charge. In all probability between now and before the week is out you [Gallagher] will be charged with First Degree Murder and armed robbery. Now, I’m not trying to scare you by telling you this, but I’m laying the facts on the table. You are involved. And what Sgt. Conrady said about how you’re going to ride it out ... in other words, what he was trying to say is, it all depends on what you do or what you want to do to try to help yourself. Now, we know that you didn’t pull the trigger, but we can put you there. ... So it is entirely your decision.
 

 Like I said, I think I’ve talked enough and I think that if you are man enough to go out there and do something, you got to be man enough to take your medicine, cause this is some strong damn medicine here, real strong.
 

 Exhibit,
 
 State v. Gallagher,
 
 Testimony on the Motions to Suppress at 52-53.
 

 [6]
 

 . Indeed, Payne could have consulted co-defendant Windsor’s counsel who also was present at the hearing. Suppression of Gallagher’s statement was as important to Windsor as to appellant, and either defendant’s counsel would have been able to describe at least the gist of Gallagher’s testimony.
 

 [7]
 

 . Judge Payne stated in his deposition that Key West had only one court reporter at the time of trial. This situation parallels that in
 
 Britt,
 
 where a single court reporter was able to informally assist those attorneys who could not get full transcripts. Had Payne really felt impeachment with Gallagher's own statement was the only way to expose his motive for inculpating appellant, Payne could have approached the court reporter for assistance.
 

 [8]
 

 . Counsel read a portion of the detective’s comments set forth at note 6,
 
 supra,
 
 particularly "Maybe you should explain that’s a first degree murder charge and in all probability between now and before the week is out you’ll be charged with first degree murder and armed robbery. Now, I’m not trying to scare you by telling you all this but I am laying the facts on the table____” At that point, the trial court instructed counsel to impeach with questions rather than the transcript itself.
 

 [9]
 

 . The fact that appellant was not acquitted does not undermine this conclusion. As explained at note 2,
 
 supra,
 
 the jury could easily have disbelieved Gallagher and still convicted appellant on the weight of circumstantial evidence. Appellant offered only a weak alibi defense, that he was at a friend’s apartment, but this could not be substantiated and was contradicted by evidence that appellant procured the gun and was seen with Gallagher and Windsor near the lounge after the crime.