**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lorenzo PULIDO, Defendant–Appellant.**

No. 88–2974.

United States Court of Appeals, Fifth Circuit.

July 27, 1989.

---

Thomas S. Berg, Roland R. Dahlin, II, Federal Public Defender, Thomas G. Lindenmuth, Houston, Tex., for defendant-appellant.

Kathy Giannaula, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, JOHNSON and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Lorenzo Pulido was convicted, following a jury trial, on one count of conspiracy to possess and one count of possession with intent to distribute marijuana. A previous trial had ended in a mistrial on May 16, 1988, after the government had attempted to introduce unrelated marijuana samples.

On May 24, 1988, defense counsel requested a copy of the trial testimony of the mistrial. The district court returned the form unexecuted. Defense counsel moved for reconsideration of the denial of the transcript request. The district court denied the motion, stating, "[T]here's no reason for the Court to spend Government money on a transcript on a case that was so short." At the second trial when the defense counsel renewed his motion for the transcript, the court replied,

> This is not the type of case that requires a transcript. It was a very, very short period of time that we were in here. There's no reason for it. There's been no showing that it's required or anything else or that you need it for any particular reason.

On appeal from the convictions resulting from the second trial, Pulido contends that the district court committed reversible error when it denied him the transcript of his mistrial.

## I.

An indigent defendant has both a constitutional and a statutory right to a free transcript of prior proceedings if it is reasonably necessary to present an effective defense at a subsequent proceeding. *United States v. Johnson*, 584 F.2d 148, 157 (6th Cir.), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1978); *see* 18 U.S.C. § 3006A(e)(1). This right extends to the case of a mistrial followed by a subsequent prosecution but has been limited by the Supreme Court according to criteria with somewhat hazy parameters. *See Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).

In *Britt*, the Court identified two factors relevant to determining whether an indigent defendant has a right to a free transcript: (1) the value of the transcript in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. *Id.* 404 U.S. at 227, 92 S.Ct. at 433. In this regard, the Court refused to require defendants to show particularized need, because

> there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a

showing of need tailored to the facts of the particular case.

*Id.* at 228, 92 S.Ct. at 434. The Court further stated that, in the context of a prior mistrial, it can be assumed that the transcript is valuable to the defendant both as a discovery device in preparation for the next trial and as a tool at the trial itself for the impeachment of witnesses. *Id.* We have interpreted *Britt* to mean that a court must assume that a transcript of a prior mistrial is valuable to the defense. *United States v. Baker,* 523 F.2d 741, 743 (5th Cir.1975).[1] Thus, this case turns on the availability of adequate alternatives to a transcript.

In *Britt,* the Court found that adequate alternatives existed because only one month separated the two trials and the same counsel represented the defendant at each trial. The Court emphasized that defense counsel had conceded that he could have obtained, from the small-town court reporter, a good deal of assistance in reading back notes taken by the court reporter at the mistrial. 404 U.S. at 229, 92 S.Ct. at 434. Thus, in denying the transcript to the defendant, the Court specifically relied upon the fact that defendant had conceded the availability of informal alternatives to a transcript. *Id.* at 230, 92 S.Ct. at 435.

In *Baker,* we concluded that the failure to furnish the defendant a copy of the transcript of the mistrial prior to the second trial required reversal of the conviction. 523 F.2d at 742. We distinguished the facts there from those in *Britt* in deciding whether functional alternatives to the transcript existed. In *Baker,* unlike *Britt,* the two trials were separated by a period of six months, and the defendant did not have the same counsel at the second trial. We emphasized that there was no agreement or concession, similar to that in *Britt,*

that alternatives to the transcript existed. *Id.* at 743.

Similarly, in *Tague v. Puckett,* 874 F.2d 1013 (5th Cir.1989), we held that even though the same counsel had represented defendant, for the purpose of determining the existence of adequate transcript substitutes we would not assume that trial counsel had a perfect memory or kept exhaustive notes. *Id.* at 1015 (citing *Britt,* 404 U.S. at 229, 92 S.Ct. at 434). We also rejected the government's contention that the availability of two witnesses' statements and limited access to the court reporter, either alone or in combination, satisfied this requirement. Our analysis in *Tague* suggests that only infrequently will we conclude that defendant has an adequate substitute for a transcript. Hence, such cases will usually present special circumstances such as those present in *Britt.*

For example, in *United States v. Smith,* 605 F.2d 839, 843 (5th Cir.1979), we upheld the denial of a transcript of a mistrial proceeding where the trials were two weeks apart and the same attorney had represented the defendant at both. However, there the request for the transcript came only five days before the second trial was to begin, and the transcript of the mistrial included 1,670 pages resulting from an eight-day proceeding. *Id.* Accordingly, in denying the transcript we gave significant weight to the timing of defendant's last-minute request and the obvious gamesmanship engaged in by his counsel. *Id.*

The facts of this case do not fall squarely under any of the above cases. Pulido's second trial occurred two months after the first trial. A different attorney represented Pulido at the second trial. However, this same counsel had been co-counsel to Pulido's counsel at the first trial. Counsel

---

1. *Baker* forecloses the government's argument, based upon out-of-circuit cases, that the transcript was not valuable in this case. In particular, the government maintains that the transcript was unnecessary because of the brevity of the first abortive trial, the presence of defendant's second trial counsel during much of the first trial, and the fact that a solvent defendant acting upon rational economic factors would not choose to pay for a transcript under these

circumstances. *See United States v. Talbert,* 706 F.2d 464, 470 (4th Cir.1983); *Slawek v. United States,* 413 F.2d 957, 960 (8th Cir.1969) (Blackmun, J.); *United States v. Sliker,* 751 F.2d 477, 491 (2d Cir.), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1984). However, although not germane to the question of the value of a transcript, some of these considerations might still be relevant to the adequacy of available alternatives, discussed *infra.*

asserts, though, that he was not present for the entirety of the first trial, which lasted only a few hours, and that his occasional presence did not constitute an adequate alternative to the transcript as contemplated by *Britt*.[2]

The government also argues that defense counsel, like Britt's counsel, conceded the availability of adequate alternatives when he admitted during the sentencing proceedings that his client was aware of the evidence at the first trial. At best, however, the statement is ambiguous; it certainly is not the equivalent of the concessions made in *Britt* and cannot be interpreted as a waiver of a constitutional right.

Likewise, the government's reliance upon *Jeffries v. Wainwright*, 794 F.2d 1516, 1520 (11th Cir.), *cert. denied*, 479 U.S. 1093, 107 S.Ct. 1307, 94 L.Ed.2d 162 (1986), for the proposition that "a functional alternative to a typed transcript includes any device which allows a defendant to present an effective defense" is misplaced. This standard appears to be no different from that employed in *Baker, Tague*, and *Smith*. It is obvious under these cases that there may be adequate alternatives to a written transcript but that such alternatives are quite limited and must, in the end, be justifiable under *Britt*. Thus, *Jeffries* merely restates the law and adds nothing to the government's position. To the extent that *Jeffries* can be read as imposing a more forgiving standard than *Baker, Tague*, and *Smith*, it must be rejected as contrary to the law of this circuit.

In summary, we conclude, given *Tague*'s recent affirmation of a strict standard for

transcript substitutes, that a violation occurred. Furthermore, a factor that tips the case in defendant's favor is that the district court relied upon suspect considerations in deciding to deny the transcript. Most significantly, it held defendant to a particularized-need standard, although *Britt* explicitly rejects the need to show such specificity. The court also over-emphasized the cost to the government of furnishing a transcript, in light of the facts that such cost apparently would not have been great, that the government did not oppose the motion, and, most importantly, that equal protection concerns predicated upon a defendant's indigence often will require that the government bear the cost of ensuring that the defendant is able to put on an effective defense.

## II.

■ Having determined that defendant's right to a transcript was violated, we must determine whether such a violation requires *per se* reversal or whether, instead, a harmless error analysis applies. The government maintains that defendant must show prejudice and that, even if it was error to deny the transcript, such error was harmless beyond a reasonable doubt because it did not alter the presentation of defendant's case in the second trial.

In *Smith*, 605 F.2d at 843–45, we undertook a harmless error analysis, but only after determining that there had been no constitutional violation.[3] In related contexts, other courts have held that defendants must show prejudice in addition to a violation.[4] Of these cases, *Rosales–Lopez*

---

**2.** We note that the brevity of the first trial cuts both ways. On the one hand, it supports the government's contention that a transcript would not be very helpful since the testimony was straightforward and brief. On the other hand, it undermines the argument that it would be in any way onerous automatically to provide a transcript upon request, as the cost would be nominal.

**3.** There, we addressed the question of prejudice solely within the context of the trial court's managerial discretion and defendant's statutory request for legal services under 18 U.S.C. § 3006A.

**4.** *See United States v. Rosales–Lopez,* 617 F.2d 1349, 1356 (9th Cir.) (denial of a transcript of a preliminary proceeding), *aff'd,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1980); *United States v. Bari,* 750 F.2d 1169, 1181–82 (2d Cir.) (daily transcript of an ongoing trial), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1984); *United States v. Kirk,* 844 F.2d 660, 662–63 (9th Cir.) (transcripts from severed trial, trial resulting in a hung jury and ongoing trial of a third party relating to the same scheme), *cert. denied,* —— U.S. ——, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988).

and *Bari* are readily distinguishable. *Rosales–Lopez* explicitly stated that preliminary proceedings may be subject to a different standard of review from that in other cases involving a denial of transcript. 617 F.2d at 1356. Likewise, in *Bari* the case of an ongoing trial did not present the same discovery and awareness-of-counsel concerns that potentially are implicated here.

*Kirk,* on the other hand, is much more closely on point. There, the proceedings in question were all separate, and the denial of the transcripts involved the same considerations relating to preparation for a second trial currently before us. To this end, the *Kirk* court undertook a prejudice analysis based upon (1) the extent of the evidence supporting the conviction and (2) whether the transcripts would have provided defendant with any material with which he could have refuted the evidence against him. 844 F.2d at 663.

Our recent decision in *Tague,* to the contrary, counsels against applying a prejudice analysis.[5] There we stated that a defendant "is not required to demonstrate that the denial of a transcript of the mistrial prejudiced him." 874 F.2d at 1014. The implications of this language are blunted somewhat by the fact that it appears in the discussion of whether the defendant must show need under *Britt.* The inquiry as to need, focusing upon the circumstances *before* the second trial, is patently distinct from a traditional harmless error analysis that concentrates upon what happened *during* the second trial. Nevertheless, the court in *Britt* proceeded to affirm the district court's order for a retrial with a furnished transcript, without addressing the question of prejudice.[6]

On balance, we conclude that a harmless error analysis would not be appropriate in this case, although we do not reach here the question of whether it is ever appropriate. This result is consistent with *Tague,* which is the law of this circuit and controls any conflict between it and *Kirk.* We also believe that it would be somewhat anomalous to interpret *Britt,* as we did in *Baker* and *Tague,* to dispense with the need to prove that a transcript would be valuable but to reincorporate these same considerations into our test by way of an after-the-fact prejudice analysis.

Moreover, because prejudice would be likely under *Britt* in any case involving complicated proceedings, where it would be costly to provide a transcript, it makes little sense to encourage the denial of transcripts in simple cases where, as here, the costs of providing them would be minimal. Finally, we note that it would be an unjustifiable waste of appellate resources to require an exhaustive comparison of trial transcripts in every case in which a transcript has been denied.

REVERSED.

CLARK, Chief Judge, concurring:

I concur in Judge Smith's opinion for the court. I write only to express my preference for an analysis which would be directly based on the constitutional value involved—equal protection. The indigent defendant is entitled to a transcript anytime a person with financial means would obtain one. Considerations of cost to the government do not control, nor can denial of the request be predicated on lack of need or necessity. The clear implication of such a process of analysis in the mistrial/retrial situation is that almost every request should be granted. This is what the case law of the Supreme Court and this court bear out. It is difficult to conceive of a situation in which a litigant with means would not want an exact reproduction of the prior proceeding to aid in tracking prior testimony and procedural developments in preparation for and during the retrial.

5. We note that the district court *a quo* did not have the benefit of *Tague* when it entered its order.

6. *Britt,* unlike the instant case, was a habeas corpus case. Hence, it came before us after the habeas district court had found a violation.