**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Theodore TYLER, Defendant–Appellant.**

No. 90–5304.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1990.

Decided Aug. 19, 1991.

Parks Nolan Small, Federal Public Defender, Columbia, S.C., for defendant-appellant.

Eric William Ruschky, Asst. U.S. Atty., argued (E. Bart Daniel, U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER, Circuit Judge, and BUTZNER and CHAPMAN, Senior Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

Theodore Tyler appeals his convictions for distribution of cocaine, in violation of 21 U.S.C. § 841, and carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Specifically, Tyler argues that a gun offered into evidence was obtained as fruit of an unconstitutional search and that he was unconstitutionally denied a transcript of an earlier trial. Finding no reversible error, we affirm.

Tyler contends that officers of the Orangeburg County, South Carolina, Sheriff's Department obtained a gun from his premises by means of a search that violated the Fourth Amendment. On December 1, 1988, after being denied entry, the officers forcibly entered Tyler's home under authority of a claim and delivery judgment.[1] After the officers entered his home, Tyler

---

1. Notice and an opportunity for a hearing, as required by S.C.Code § 15–69–80, were given to Tyler prior to the issuance of the claim and delivery judgment.

The Court has suggested that an opportunity for a prior hearing obviates possible Fourth Amendment problems with replevin statutes.

confronted them with a pistol.[2] The officers then withdrew from the house. Tyler, without the gun, exited the house and was taken into custody. The officers then obtained a search warrant to search the house for the gun. During the search the officers found a gun in an upstairs bedroom under a mattress, which is the gun introduced into evidence.

■ The Fourth Amendment makes "no reference to civil proceedings for the recovery of debts...." *Murray's Lessee v. Hoboken Land and Improvement Co.*, 59 U.S. (18 How.) 272, 285, 15 L.Ed. 372 (1856). Even if the Fourth Amendment did apply in such a situation, the rationale applied in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would bar suppression of the evidence obtained in the search.[3] The officers did everything possible to act in good faith. Under South Carolina law, the claim and delivery judgment gave them the authority to enter the house if the property demanded was not delivered. S.C.Code § 15–69–180. After lawful entry, when they were confronted by the armed defendant, they exited the house and obtained a search warrant before reentering the house. It is at once apparent there was nothing more the officers could have done. Therefore, the district court did not err in denying Tyler's motion to suppress evidence seized during the search.

■ Tyler correctly asserts that the district court erroneously held Tyler to a "particularized need" standard in denying his request for a transcript of his first trial. The Supreme Court has "consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case." *Britt v. North Carolina*, 404 U.S. 226, 228, 92 S.Ct. 431, 434, 30 L.Ed.2d 400 (1971); *United States v. Pulido*, 879 F.2d 1255, 1257 (5th Cir. 1989) ("a court must assume that a transcript of a prior mistrial is valuable to the defense."). However, the district court's application of the wrong test does not, by itself, warrant reversal of Tyler's conviction.

■ While it is true that "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal," *Britt v. North Carolina*, 404 U.S. at 227, 92 S.Ct. at 433, "if a hypothetical defendant who is financially solvent would decline to pay for the production of a mistrial transcript because it would not assist in preparing his case for a second trial, then theoretically an indigent in the same circumstances would not be denied equal protection if he were not provided a free transcript." *United States v. Talbert*, 706 F.2d 464, 470 (4th Cir.1983).

In this case the second trial took place less than one month after the first trial, before the same judge. Tyler was represented in each trial by the same attorney, the first trial only lasted half a day, only three witnesses testified for the prosecu-

*Fuentes v. Shevin*, 407 U.S. 67, 96 n. 32, 92 S.Ct. 1983, 2002 n. 32, 32 L.Ed.2d 556 (1972).

2. The parties dispute whether an entry order, subsequent to the claim and delivery judgment, issued by Magistrate Brown was obtained prior to or after the officers' entry into Tyler's house. The government asserts that no entry was made until after the entry order was obtained. Tyler argues that the initial entry into the house was made prior to the officers' securing an entry order. Magistrate Brown testified that the officers asked for and obtained the entry order after Tyler confronted them with a gun. The government submits that she was mistaken in her testimony.

  S.C.Code § 15–69–180 authorized the officers to enter solely on the authority of the claim and delivery judgment. Therefore, the entry order was unnecessary and the timing of its issuance is of no consequence.

3. *Leon* stands for the proposition that evidence obtained pursuant to a search warrant, valid on its face, need not be suppressed even if the warrant is later found to be invalid so long as the officers who executed the search acted in good faith in relying on the search warrant. "When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *United States v. Leon*, 468 U.S. at 924, 104 S.Ct. at 3421.

  The rationale behind the *Leon* decision was the Court's belief that no deterrent effect would be served by excluding evidence which the officers obtained in good faith reliance on a search warrant.

tion, the government opened its files to the defense, the prosecution did not obtain a transcript of the first trial, and the court provided that the second trial would be interrupted to check the court reporter's notes if necessary. Also, the same court reporter was utilized at both trials and had her notes available from the first trial for the use of the defense.[4] There was no request by the defense to have the reporter's notes read to them, and no suggestion of prejudice in the second trial.

■ The upshot of the case is that the defendant seeks to establish a *per se* rule of reversible error for cases in which a transcript of the proceedings in the first trial is not furnished to the defendant when a mistrial has been followed by a second trial. The argument goes that "[o]nce having shown that the defendant's right to a transcript was violated, reversal is required. There is no harmless error test." Defendant's Brief p. 18.

We decline to impose such a rule. Even if, in an abundance of caution, a financially solvent defendant would have paid for the production of a mistrial transcript when no use for it was either apparent or even suggested, except possible contradiction, there is simply no prejudice. Thus we decide that the error of the district court was harmless under F.R.Cr.P. 52(a). We are of opinion that "the error itself [did not have] substantial influence" on the result. Neither do we think there is "grave doubt" as to whether that proposition is true. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), quoted in *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). As the Court pointed out in *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), in which it ap-

plied a Rule 52(a) harmless error analysis to an admitted violation of Criminal Rule 6(b), it has applied the harmless error rule to error occurring in the trial itself, as here. The Court cited *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which held that even constitutional errors were subject to a harmless error analysis if established beyond a reasonable doubt, *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), which held the analysis applicable to "prosecutorial allusion to … [a defendant's] failure to rebut the government's evidence," and *Lane*, which held the analysis applicable to a misjoinder under F.R.Cr.P. 8. Just as important, and only recently, the Court has overruled itself and held in *Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), that even the admission of a coerced confession is subject to a harmless error analysis. While we fancy that the error here is simply a question of federal criminal procedure, and so would be subject only to the classic harmless error analysis of *Kotteakos*, which we have recited above, failure to provide a transcript has been alluded to as an equal protection right between the indigent and nonindigent, and as a part of the right to an attorney under the Sixth Amendment. Even if we assume for argument that either or both of those last allusions are true, we are further of opinion that the error in this case was harmless beyond a reasonable doubt as required by *Chapman v. California*. In this same connection, it is important to note that we have read the entire transcript of the second trial. Not in one instance did the defendant attempt to impeach any witness by claimed inconsistent testimony given at the

---

4. Cf. *Britt v. North Carolina*, 404 U.S. at 229, 92 S.Ct. at 434. *Britt* indicates a "doubt" that "limited access" to the court reporter during the course of the second trial would be a sufficient palliative. That statement of the Court is reasonably read to mean that if access to the court reporter during the second trial was not "limited" a sufficient remedy might have been at hand. The district court here might well have taken that view, for it provided that access to the court reporter would not be limited in that

it would interrupt the trial if appropriate to provide defendant access to the court reporter's notes. That analysis would probably have satisfied the *Britt* requirement of (1) considering the value of the transcript to the defendant in connection with the trial for which it is sought, and (2) the availability of alternative devices. We do not depend on this construction of *Britt*, however, for in any event we are of opinion the error was harmless as set forth in the text.

first trial. Neither was any other use sought or made of such testimony.

It follows that we are of opinion the error of failing to provide a transcript to the defendant was harmless.

The judgment of conviction is

AFFIRMED.