23 F.3d 404
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Terrance SAVAGE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appelle,
v.
Keith Donnell MINOR, Defendant-Appellant.
 Nos. 92-5734, 92-5798.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1993.
Decided April 11, 1994.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CR-91-114-R)
 George David Nixon, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, VA, for appellant Minor; George Alfred McLean, Roanoke, VA, for appellant Savage.
 Stephen Urban Baer, Asst. U.S. Atty., Roanoke, VA, for appellee.
 E. Montgomery Tucker, U.S. Atty., Roanoke, VA, for appellee.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 These are the combined appeals of defendants Terrance Savage and Keith Minor of convictions of one count (one) of conspiracy to distribute or possess with intent to distribute cocaine base, in violation of 21 U.S.C. Sec. 846; two counts (six and seven) of distributing or aiding and abetting the distribution of cocaine base, in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841(a)(1) andSec. 841(b)(1); and one count (eight) of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1). In addition, Savage appeals his convictions of four counts (two, three, four, five) of distribution of cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1) and Sec. 841(b)(1)(c). Both defendants appeal the admission of opinion testimony of a forensic chemist, relying on her interpretation of graphs produced by tests run by another chemist, that the drugs seized on January 2, 1991 were cocaine base. The defendants also appeal the refusal of the district court to grant a mistrial based on a discrepancy between tapes admitted into evidence and transcripts used by the jury to follow the tapes, and the sufficiency of the evidence to sustain their convictions on all counts. We affirm.
 
 
 2
 The report of a confidential informant that drugs were being sold around 707 Hunt Avenue in Roanoke, Virginia, prompted Officer Kirk Hubbard of the Roanoke City Police Department to begin a series of undercover drug buys at that address. The informant introduced Terrance Savage as "Booty" to Officer Hubbard, at apartment 58, 707 Hunt Avenue. Apartment 58 was listed in the name of Earl Viar, who had a relative named Herman Viar, Jr., who was known to the Roanoke police as "Booty." Therefore, the Roanoke police, including Officer Hubbard, mistakenly assumed at first that the identity of the individual selling drugs to Officer Hubbard was Herman Viar, Jr., but was later identified as Terrance Savage.
 
 
 3
 On November 28, 1990, the informant took Officer Hubbard to 707 Hunt Avenue, apartment 58, where he purchased .98 grams of crack cocaine from Savage.[1] Officer Hubbard returned to the same apartment on the same day and purchased another 1.03 grams of cocaine base from Savage. On November 29, 1990, Officer Hubbard purchased more cocaine base from Savage at apartment 58. On December 3, 1990, Officer Hubbard made another purchase of cocaine base from Savage, but this time the purchase took place in apartment 55 at 707 Hunt Avenue.
 
 
 4
 Officer Hubbard next met with Savage on December 10, 1990. At this time no drugs were sold, but Officer Hubbard wore a hidden recording device and taped his discussion with Savage concerning a future buy of one half ounce of crack cocaine. Officer Hubbard discussed a prospective purchase with Savage in a recorded conversation on December 11, 1990 and in a separate unrecorded conversation that took place while Keith Minor was present.
 
 
 5
 On December 18, 1990, Officer Hubbard went to apartment 58, where Savage let him in. As Officer Hubbard followed Savage to the back of the apartment, Minor asked Savage if he wanted him "to hold it," whereupon Savage reached under the couch and handed Minor a small, blue-steel revolver, which Minor put in Minor's jacket. Officer Hubbard and Savage discussed the prospective half-ounce buy in the back bedroom at apartment 58. Savage stated that he didn't have that much with him, but that he could get it at home. Officer Hubbard drove Savage to 315 Hanover Street, where Savage sold him 6.0 grams of cocaine base. Officer Hubbard testified that while he was driving Savage back to Hunt Avenue, Savage yelled a greeting to a woman on the street and she yelled back, calling Savage by the name Terry. Officer Hubbard specifically wondered about this, since he thought he was dealing with Herman Viar, Jr., a/k/a Booty. Officer Hubbard carried a recording device during this buy on December 18, 1990 and the recording was admitted into evidence.
 
 
 6
 On January 2, 1991, Officer Hubbard met with Savage and Minor in front of 707 Hunt Avenue. Savage took Officer Hubbard into apartment 55, with Minor following them. Minor testified that he attended the drug sale because he was waiting for Savage to get money and then buy some stolen clothing from him. By his own admission, Minor was aware that Savage was selling Officer Hubbard drugs. There was evidence that Minor said to Savage to be sure the door was locked, and Savage replied that it was. While Officer Hubbard purchased cocaine base from Savage, Minor acted as a lookout at the kitchen window. Officer Hubbard tape recorded conversations during this drug buy. Shortly after this transaction, Detective Wood and Detective Carmichael performed searches of apartments 55 and 58. Keith Minor and Terrance Savage were found in apartment 58. Detective Wood did not arrest Savage, but merely photographed him, partly because of a change of his expected clothing and also because he was expecting to find Herman Viar, Jr., a person whom he knew and who he thought was the individual that sold Officer Hubbard the drugs. The officers photographed all the people found in apartment 58, questioned them about Herman Viar, Jr., and were told that he had never been there. The search also produced 4.47 grams of cocaine base.
 
 
 7
 Still looking for Herman Viar, Jr., Officer Carmichael obtained a search warrant for 315 Hanover Street, where she found a blue denim jacket, later identified by Officer Hubbard as the jacket that Savage was wearing, and a blue-steel .22 caliber revolver, similar to the one held by Minor on December 18, 1990. Later that day, Officer Hubbard looked at the photographs taken by the detectives of the people found in apartment 58 and identified the photograph of Terrance Savage as the individual from whom he purchased the cocaine on all occasions.
 
 
 8
 Four tape recordings taken on December 10, 11, and 18, 1990, and January 2, 1991 were admitted into evidence at trial. The government gave the jury a transcript of the tapes to follow as they listened. Officer Hubbard testified that the transcripts accurately reflected what was on the tapes. After the tapes had been played, the district court instructed the jury as follows:
 
 
 9
 You have been permitted to have in front of you transcriptions for a limited purpose of helping you follow the conversations as you listened to the tape recordings and also to help you keep track of the speakers. The transcript, however, is not evidence. The tape recording itself is a primary evidence of its own contents. You are specifically instructed that whether the transcript correctly or incorrectly reflects the conversation or the identity of the speakers is entirely for you to decide based on what you have heard here by the preparation of the transcripts and from your own examination of the transcripts in relation to what you heard on the tape recordings.
 
 
 10
 If you decide that the transcript is in any respect incorrect or unreliable you should disregard it for that extent.
 
 
 11
 The defendants requested a mistrial, based on the fact that the transcripts contained statements by the defendants that were not heard on the tape. Specifically, the transcript of December 18, 1990 lists an unknown female as saying "Oh, Terry ... come here" and the transcript of January 2, 1991 includes Minor saying "Make sure that the door is locked." The district court denied the mistrial request, due to the limiting instructions and the fact that the jury would have access to the tapes during deliberations, but not the transcripts. Defense counsel for Savage had opportunity to cross-examine Officer Hubbard about any discrepancies between the tape and transcripts, including the identification of Savage. On redirect, Officer Hubbard testified that the transcript was prepared after listening to the tape on a more sophisticated system than the one in court, and that the statements can be heard using the better equipment. On direct examination, Minor himself corroborated the transcript in part by stating that he "told them listen lock the door--."
 
 I.
 
 12
 The defendants challenge the admissibility of the testimony of Chris Bryant, Forensic Science Supervisor of the Drug Identification Section in the Western Region Laboratory of the Division of Forensic Science, State of Virginia, as to her opinion that the drugs seized on January 2, 1991 were cocaine base. Mrs. Bryant based her opinion on her review of the graphs produced by forensic tests conducted by Terry Lee, one of the chemists that she supervised. The defendants objected at trial that Mrs. Bryant should not be allowed to testify as to the identity of these drug samples because the chain of custody was not established, and because Mrs. Bryant did not perform the tests herself. On appeal, however, the defendants argue that Mrs. Bryant's testimony was not admissible because the tests that she relied on were not shown to be tests reasonably relied on by experts in the field of forensic science, pursuant to Fed.R.Evid. 703[2] and that Mrs. Bryant's subordinate who conducted the tests was not shown to be an expert or qualified to conduct the tests. Since defendants raised neither of these specific objections at trial, we must review them for plain error under Fed.R.Crim.P. 52(b), which provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 
 
 13
 Although we think correct the district court's finding that the results obtained by Mrs. Bryant's assistant on which she relied are the kinds of things which expert witnesses are entitled to rely upon in expressing an opinion under Rule 703, in the event that that is not so, we do not believe that the error complained of is plain error. In this respect, we have examined the transcript and do not find there was anything out of the ordinary in the laboratory procedures upon which Mrs. Bryant based her conclusion.
 
 II.
 
 14
 Both defendants appeal the district court's refusal to grant a mistrial after the jury saw transcripts of the tape recordings containing the inaccuracies mentioned above. That assignment of error is without merit because we think the district court properly charged the jury to credit the tape recordings in the event of any inconsistency, and we do not suppose that the jury did not follow its instructions.[3]
 
 III.
 
 15
 Minor appeals all his convictions, claiming that there was insufficient evidence to show that he was involved in a drug conspiracy, that he aided and abetted Savage in particular drug transactions, and that he used or carried a firearm during and in relation to a drug trafficking crime. Defendant Savage appeals his convictions on all counts claiming that there was insufficient evidence to prove that Savage was the individual who sold cocaine to Officer Hubbard, but that the evidence was against the Herman Viar, Jr. we have previously mentioned.
 
 
 16
 On direct appeal regarding the sufficiency of the evidence, we review the evidence at trial in the light most favorable to the Government, and if we find there was substantial evidence to support the jury's verdict, we must affirm the conviction. See Glasser v. United States, 315 U.S. 60, 80 (1942). We are of opinion that substantial evidence supports each of the defendants' convictions.
 
 
 17
 A brief review of the evidence in the light most favorable to the government reveals that Minor was present during a conversation between Savage and Officer Hubbard regarding a prospective half-ounce purchase; Minor was present on December 18, 1990, when the half-ounce sale was to take place and participated by asking Savage if he wanted him to hold the gun, and by holding the gun in full view of the potential drug buyer; Minor was aware on January 2, 1991 that Savage was selling drugs to Officer Hubbard; and Minor acted as lookout for Savage during the drug transaction on January 2, 1991. Minor's prior knowledge of Savage's drug dealing with Officer Hubbard, and his voluntary presence during what he knew to be drug transactions on December 18, 1990 and January 2, 1991, combined with his participation as weapon holder on one occasion and lookout on another, are sufficient to establish his status as a conspirator pursuant to 21 U.S.C. Sec. 846.
 
 
 18
 Furthermore, Minor's overt acts of holding the gun and acting as lookout, combined with his knowledge that he did so during a drug transaction, support his convictions of the substantive offenses of aiding and abetting in the distribution of cocaine base, in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841(a)(1) andSec. 841(b)(1). Even if Minor did not otherwise participate in the actual sale of drugs, his substantive drug convictions are easily sustainable for aiding and abetting the sales. "To be convicted of aiding and abetting,'[p]articipation in every stage of an illegal venture is not required, only participation at some stage accompanied by knowledge of the result and intent to bring about that result.' " United States v. Arrington, 719 F.2d 701, 705 (4th Cir.1983), cert. denied, 465 U.S. 1028 (1984) ( quoting United States v. Hathaway, 534 F.2d 386, 399 (1st Cir.), cert. denied, 429 U.S. 819 (1976)). There was evidence which tended to show that Minor had the requisite knowledge of the result and intent to bring about that result: he knew Savage was selling drugs, held the gun, and acted as lookout. Essentially, these convictions rested on credibility determinations which were resolved in favor of the government.
 
 
 19
 Minor claims that his possession of the gun could not have been during a drug transaction since the actual transfer of drugs for money occurred a short time later at a location where he was not present. This interpretation unduly narrows the definition of drug trafficking crime. We have found the elements of 18 U.S.C. Sec. 924(c) satisfied where the government has proved possession of a weapon in close proximity with drugs after a sale and in connection with a conspiracy. United States v. Cummings, 937 F.2d 941 (4th Cir. cert. denied, --- U.S. ----, 60 U.S.L.W. 3343 (1991). Minor possessed the gun in close proximity to Savage, and at a time when he knew that Savage had possession of drugs and was in the process of arranging a drug sale. The fact that Savage took Officer Hubbard to another location for the actual drug sale does not exculpate Minor. Minor was convicted of conspiracy to distribute or possess with intent to distribute cocaine, and the gun was held by Minor during and in relation to that conspiracy. We think the evidence is sufficient.
 
 
 20
 Savage's contention that there was insufficient evidence to support a determination that the person Officer Hubbard bought drugs from was Terrance Savage has no merit. Sufficient evidence supports Savage's identification and proper conviction, including the testimony of Officer Hubbard and Minor as to his identity, as well as the absence of evidence of any involvement by Herman Viar, Jr. Although Savage offers exculpating alternative interpretations of the evidence adduced at trial, including the alleged impossibility that Savage could have gone to 315 Hanover Street and changed clothes and returned to Hunt Avenue prior to the search there, such contradictions as may have existed were resolved by the jury favorably to the government.
 
 
 21
 The convictions of both defendants are accordingly
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The numbers of grams of drugs mentioned for purchase in our opinion coincide with those used in the defendants' briefs
 
 
 [2]
 Fed.R.Evid. 703 states:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
 
 
 [3]
 We think there was no error here. But even if there were error in permitting the jury to see these transcripts, it was harmless because it did not have a substantial influence on the jury's verdict. See Kotteakos v. United States, 328 U.S. 750, 765 (1946); United States v. Tyler, 943 F.2d 420, 423 (4th Cir.), cert. denied, 60 U.S.L.W. 3419 (1991). The government carried any burden of showing that the inaccuracies, if any, did not prejudice the defendants. Besides the cautionary instruction, the substance of both of the alleged inaccuracies on the transcripts were admitted through direct testimony without objection. Officer Hubbard testified that he was in the car with Savage and heard the girl call to Savage by the name of Terry, and Keith Minor, Savage's co-defendant, identified Savage and admitted that he told Savage to lock the door. Officer Hubbard also testified that it was Savage, by whatever name, from whom he made the various purchases