UNITED STATES of America, Appellee,

v.

Earl Renardo GAITHER, a/k/a Earl Kelly, a/k/a Earl 4X, Appellant.

No. 73–2496.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1975.

Decided Nov. 10, 1975.

Certiorari Denied April 26, 1976.

See 96 S.Ct. 1728.

William A. Dervishian, Richmond, Va. [court-appointed counsel], for appellant.

Gerard P. Martin, Asst. U. S. Atty. (Jervis S. Finney, U. S. Atty., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and BUTZNER and RUSSELL, Circuit Judges.

PER CURIAM:

The defendant appeals a conviction for aiding and abetting in connection with the robbery of a federally-insured bank in Queenstown, Maryland.[1] He asserts that (1) he was denied effective assistance of counsel, (2) that his arrest and the ensuing search of his car were without probable cause, and (3) that due process was denied him in the denial of his motions to suppress. All claims are without merit and we affirm the conviction.

The defendant discharged his first trial counsel, who had been retained by him, and filed an affidavit of poverty. It was difficult to satisfy him. He rejected the first counsel appointed for him,[2] which was less than a month before his second trial. On the same date the District Court appointed new counsel at his request.[3] A continuance was requested one week before the date set for trial, on the grounds that the new counsel did not have adequate time to interview witnesses and that the transcript of the first trial was unavailable. The motion was denied.

It is well-settled that the question of a continuance is within the discretion of the trial judge, based on the circumstances of the particular case.[4] In cases such as this one, the basic criterion is the performance of counsel during the trial.[5] The record shows that trial counsel conducted penetrating and lengthy cross-examination of government wit-

1. 18 U.S.C. § 2113(a), (b), (d), and (f).

2. Defendant had been granted a new trial on May 29, 1973, and his retrial date was set by the court for August 6, 1973.

3. Defendant refused to talk to his newly appointed counsel until two weeks prior to trial.

4. *Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921, *reh. denied,* 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964); *United States v. Pigford* (4th Cir. 1972), 461 F.2d 648, 649.

5. *Sykes v. Commonwealth of Virginia* (4th Cir. 1966), 364 F.2d 314, 316.

nesses, and raised all pertinent defenses. It should be borne in mind that defendant had full opportunity to interview all witnesses at the first trial; furthermore, there is no indication that counsel was actually unable to interview all the defense witnesses at the second trial.[6] This case is similar to *United States v. Grow* (4th Cir. 1968), 394 F.2d 182, *cert. denied*, 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968), in which the defendant fired his first counsel and then contended that his second counsel's lack of familiarity with the case was a ground for reversal. This Court concluded that defendant was in no position to complain of a situation for which he was "intentionally and knowingly responsible."[7]

Defendant also asserts that he was denied the effective assistance of counsel by the failure of the Court to provide him with a transcript of his first trial. It is claimed that this transcript was essential for the impeachment of witnesses and for discovery purposes. However, it should be noted that the transcript was not yet available to the Court itself; the Court estimated that it would take the reporter some twenty-eight days of non-stop work to prepare it. Consequently, the Court offered defendant its notes of the first trial as well as specified portions of the transcript. This fulfills the requirement of "alternative devices" as set forth in *Britt v. North Carolina* (1971), 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400. *Griffin v. Illinois* (1956), 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, requires only that a transcript be provided to an indigent prisoner when it is available for a price to other prisoners; in this case, physical limitations, not lack of funds, made it impossible for the transcript to be provided at the time of trial.

Defendant next argues that there was no probable cause for his arrest. Defendant had been observed by FBI agents leading the bank robbers to the bank, waiting in his car outside the bank, and fleeing as the robbers were apprehended. At this time, a "flash" bulletin was sent over the police radio with a description of the car, its license number, and the fact that it was wanted in connection with a bank robbery. Defendant was arrested by a police officer, acting on that description. The first trial counsel conceded that there was probable cause for the arrest, but trial counsel at the retrial saw fit to raise it. Assuming *arguendo* that this issue was not waived, we find there was probable cause. The radio bulletin was based on personal observation by the FBI, not on an informant's tip alone.[8] This factor distinguishes the instant case from *Whiteley v. Warden* (1971), 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306. While holding that there was no probable cause for a radio alert due to a lack of corroboration of an informant's tip, the Court noted that officers are entitled to rely on radio bulletins that *are* based on probable cause.[9] This Court has held that probable cause "can rest upon the *collective* knowledge of the police, rather than solely on that of the officer who actually makes the arrest."[10]

Finally, defendant alleges error in the failure of the trial court to suppress certain items which were taken from his person and car. However, these items were discovered as part of a valid search incident to arrest. A complete search of a suspect's person incident to a lawful

---

**6.** New counsel was appointed July 20, 1973. Motion for continuance was denied and the trial was begun August 7, 1973. Counsel had ample time to interview the witnesses, particularly since court was in recess from August 9 to August 13.

**7.** 394 F.2d at 210: *see also, United States v. Lisk* (4th Cir. 1972), 454 F.2d 205; *United States v. Inman* (4th Cir. 1973), 483 F.2d 738.

**8.** The FBI had been alerted by a telephone call advising that the defendant's car, which had been spotted at the scene of a previous bank robbery, was at a certain location. After arriving at this location, agents observed defendant place an object (later discovered to be a ski mask) in a culvert.

**9.** 401 U.S. at 568, 91 S.Ct. 1031.

**10.** *United States v. Pitt* (4th Cir. 1967), 382 F.2d 322, 324 (emphasis in opinion).

arrest has been allowed.[11]  Also, a search of an automobile at the police station while the suspect is in custody is permissible.[12]

Accordingly, the judgment of the District Court is affirmed.

*Affirmed.*

**11.** *United States v. Robinson* (1973), 414 U.S. 218, 224–237, 94 S.Ct. 467, 38 L.Ed.2d 427.

**12.** *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.