Bernard Eric MILLER, Petitioner–
Appellant,

v.

William SMITH;  Attorney General of the
State of Maryland, Respondents–
Appellees.

No. 95–7521.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1997.

Decided May 23, 1997.

**ARGUED:** Laurack Doyle Bray, Washington, DC, for Appellant. Carmen Mercedes Shepard, Office of the Attorney General of Maryland, Baltimore, MD, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Evelyn O. Cannon, Assistant Attorney General, Kathleen Hoke Dachille, Assistant Attorney General, Baltimore, MD, for Appellees.

Before WILKINSON, Chief Judge, and RUSSELL, WIDENER, HALL, MURNAGHAN, ERVIN, * WILKINS, HAMILTON, LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge HAMILTON wrote the majority opinion, in which Chief Judge WILKINSON and Judges RUSSELL, WIDENER, WILKINS, LUTTIG, and WILLIAMS joined. Judge MURNAGHAN wrote a dissenting opinion, in which Judges HALL and MICHAEL joined.

**OPINION**

HAMILTON, Circuit Judge:

Under Maryland law, as a prerequisite to obtaining a free trial transcript in connection with an appeal, an indigent criminal defendant must first apply for legal representation with the Public Defender's Office. *See* Maryland Rule 1–325(b).[1] A trial transcript is provided to an indigent criminal defendant if, following his application for legal representation with the Public Defender's Office, the Public Defender's Office represents the indigent criminal defendant or the Public Defender's Office declines to represent the indigent criminal defendant. *See* Md. Ann.Code art. 27A; Maryland Rule 1–325(b). Following his convictions in Maryland state court, petitioner, Bernard Miller, moved the state trial court to order the State of Maryland to pay the cost of preparing his trial transcript in connection with his appeal even though he refused to apply for legal representation with the Public Defender's Office. Miller refused to apply for legal representation with the Public Defender's Office because he retained the services of a private attorney willing to handle the appeal *pro bono*. Pursuant to Maryland Rule 1–325(b), the state trial court denied Miller's request for a trial transcript. The issue presented in this appeal is whether the state trial court's denial of Miller's motion for a trial transcript violated his Sixth Amendment right to counsel of choice and his rights guaranteed by the Equal Protection and Due Process Clauses of the Fourteenth Amendment. For the reasons stated below, we conclude Miller's constitutional rights were not violated in this case.

I

Miller was one of two men charged with the kidnapping, robbery and murder of Pamela Basu. Prior to trial, Miller, as an indigent, was offered representation through the Public Defender's Office, but declined. He was represented at trial by Laurack Bray, an attorney whom he privately engaged. Bray agreed to represent Miller *pro bono*. Following a jury trial, Miller was convicted of several offenses, including felony murder. He was sentenced to life plus ten years. Miller noted a timely appeal.

While his appeal was pending, Miller filed a motion in the state trial court requesting the State of Maryland to pay the cost of preparing his trial transcript. Because Miller had not requested representation through the Public Defender's Office and because Bray refused to seek appointment by the Public Defender's Office, the state trial court

---

* Judge ERVIN heard oral argument but did not participate in the decision. Judge NIEMEYER and Judge MOTZ did not participate.

1. Maryland Rule 1–325(b) provides:

The court shall order the State to pay the court costs related to an appeal or an application for leave to appeal and the costs of preparing any transcript of testimony, brief, appendices, and record extract necessary in connection with the appeal, in any case in which (1) the Public Defender's Office is authorized by these rules or other law to represent a party, (2) the Public Defender has declined representation of the party, and (3) the party is unable by reason of poverty to pay those costs.

denied the motion pursuant to Maryland Rule 1–325(b). Miller timely appealed the denial of his motion for a trial transcript to the Court of Special Appeals of Maryland, contending that Maryland Rule 1–325(b) violated his Sixth Amendment right to counsel of choice and his rights guaranteed by the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

The Court of Special Appeals reversed. The Court of Special Appeals held that, under Maryland Rule 1–325(b), "where an indigent appellant who would otherwise qualify for representation by the Public Defender chooses to be represented by a qualified private attorney and that attorney elects to represent the appellant without fee of any kind or from any person, strictly on a pro bono basis, the Public Defender is obliged to provide the necessary transcript." *Miller v. State*, 98 Md.App. 634, 635 A.2d 1, 6 (1993). In reaching its conclusion, the Court of Special Appeals interpreted the legislative history of Maryland Rule 1–325(b) as evincing an intent to provide a transcript under the circumstances of this case. *Id.* Because the statutory question was dispositive, the Court of Special Appeals did not address Miller's constitutional arguments.

The State of Maryland then appealed to the Court of Appeals of Maryland. That court reversed. The Court of Appeals disagreed with the Court of Special Appeals' interpretation of Maryland Rule 1–325(b), concluding that Maryland Rule 1–325(b) required Miller to "apply to the Public Defender and be represented by, or refused representation by, that office before he can receive a free transcript." *State v. Miller*, 337 Md. 71, 651 A.2d 845, 849 (1994). The Court of Appeals also rejected Miller's Fourteenth Amendment claim, reasoning that there could be no Fourteenth Amendment violation "when an individual is denied a right simply because of his own failure to comply with reasonable state procedures and regulations." *Id., 651 A.2d* at 852. Finally, the Court of Appeals rejected Miller's Sixth Amendment argument. The court concluded

that, "[i]n the absence of[a constitutional right to counsel of choice], there is no constitutional violation when the State requires that an indigent defendant avail himself of the services of the Office of the Public Defender in order to obtain a free transcript." *Id., 651 A.2d* at 853.

Miller then filed a petition for writ of habeas corpus in the United States District Court for the District of Maryland. *See* 28 U.S.C. § 2254. Following the recommendation of a magistrate judge, the district court denied the petition. Miller appealed to this court, and a divided panel of this court reversed. *See Miller v. Smith*, 99 F.3d 120 (4th Cir.1996). Thereafter, a majority of the active circuit judges on this court voted to vacate the panel opinion and rehear this case *en banc.*[2] We now affirm.

## II

Miller contends that the state trial court's denial of his motion for a trial transcript pursuant to Maryland Rule 1–325(b) violated his rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. We disagree.

Over the past forty years, the Supreme Court has, on numerous occasions, addressed the appellate rights of indigents. The landmark case, of course, is *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (plurality). *Griffin* involved an Illinois rule allowing a convicted criminal defendant to present claims of trial error to the Supreme Court of Illinois only if he procured a transcript of the testimony adduced at his trial. *Id.* at 13 n. 2, 76 S.Ct. at 588 n. 2. The Illinois rule provided no exception for an indigent defendant, other than one sentenced to death. *Id.* at 13–14 and n. 2. Consequently, a defendant who was unable to pay the cost of obtaining a transcript could not obtain appellate review of the asserted trial error. The Supreme Court invalidated the Illinois rule because once a state establishes appellate review, the state cannot "bolt the door to equal justice." *Id.* at 24, 76 S.Ct. at 593

---

**2.** Miller's direct appeal to the Court of Special Appeals of Maryland was dismissed because he

failed to provide a trial transcript.

(Frankfurter, J., concurring in the judgment).

In subsequent cases, the Supreme Court invalidated similar financial barriers to appellate review, while at the same time reaffirming the principle established in *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), that a State is not obligated to provide appellate review for criminal defendants. *See Lane v. Brown*, 372 U.S. 477, 482–485, 83 S.Ct. 768, 771–774, 9 L.Ed.2d 892 (1963) (invalidating an Indiana rule that, on appeal from the denial of a writ of error *coram nobis*, only the public defender could obtain a free transcript of the lower court's hearing on the *coram nobis* application; if the public defender refused to represent the applicant, no transcript was provided, and, as a result, the applicant had no appeal at all); *Draper v. Washington*, 372 U.S. 487, 497–500, 83 S.Ct. 774, 779–781, 9 L.Ed.2d 899 (1963) (invalidating rule that an indigent criminal defendant could only obtain a free trial transcript if he demonstrated to the trial court that his contentions on appeal would not be frivolous); *Burns v. Ohio*, 360 U.S. 252, 256–58, 79 S.Ct. 1164, 1168–1169, 3 L.Ed.2d 1209 (1959) (invalidating rule requiring $20 filing fee in order to move the Supreme Court of Ohio for leave to appeal from a judgment of the Ohio Court of Appeals affirming a criminal conviction).

The Supreme Court has also applied *Griffin* beyond the transcript and fee context to cases involving the adequacy of an indigent's access to the appellate system. For example, in *Douglas v. California*, the Court held unconstitutional California's requirement that appellate counsel be appointed for an indigent only if the appellate court determined that such appointment would be helpful to the defendant or to the court itself. 372 U.S. 353, 357–58, 83 S.Ct. 814, 816–817, 9 L.Ed.2d 811 (1963). The Court observed that the California requirement at issue lacked the "equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent . . . is forced to shift for himself." *Id.* at 358, 83

S.Ct. at 817. The California requirement, according to the Court, left an "indigent, where the record is unclear or the errors are hidden," with "a meaningless ritual, while the rich man [enjoyed] a meaningful appeal." *Id.*

But, the Supreme Court has also recognized limits on the principle of protecting indigents in the criminal justice system. For example, in *Britt v. North Carolina*, the Court held that an indigent criminal defendant was not entitled to a transcript of his first trial in preparation for his retrial where "he had available an informal alternative which appear[ed] to be substantially equivalent to a transcript." 404 U.S. 226, 230, 92 S.Ct. 431, 435, 30 L.Ed.2d 400 (1971). In *Ross v. Moffitt*, the Court held that indigents had no constitutional right to appointed counsel for a discretionary appeal. 417 U.S. 600, 615–19, 94 S.Ct. 2437, 2446–2448, 41 L.Ed.2d 341 (1974). In *United States v. MacCollom*, the Court rejected a challenge to a federal statute which permitted a district court to provide an indigent with a free trial transcript only if the district court certified that the challenge to the conviction was not frivolous and the transcript was necessary to prepare the § 2255 motion. 426 U.S. 317, 328, 96 S.Ct. 2086, 2093, 48 L.Ed.2d 666 (1976). In *Bounds v. Smith*, the Supreme Court addressed whether indigent prisoners must be provided access to a law library so that they can file petitions for post-conviction relief. 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Court, after discussing an indigent's right to meaningful access to the courts, noted that alternative systems of providing constitutionally-required resources are acceptable:

> It should be noted that while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here . . . does not foreclose alternative means to achieve that goal. . . . Among the alternatives . . . [is] the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of the public defender or legal services offices.

*Id.* at 830–31, 97 S.Ct. at 1499.

The judicial underpinnings of *Griffin* and its progeny are the Due Process and

Equal Protection Clauses of the Fourteenth Amendment. *See M.L.B. v. S.L.J.*, —— U.S. ——, ——, 117 S.Ct. 555, 566, 136 L.Ed.2d 473 (1996) (noting that *Griffin* and its progeny "reflect both equal protection and due process concerns"); *Ross*, 417 U.S. at 608–09, 94 S.Ct. at 2443 ("The precise rationale for the *Griffin* and *Douglas* lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of that Amendment."). The equal protection analysis focuses on "whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants." *Bearden v. Georgia*, 461 U.S. 660, 665, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221 (1983); *see also M.L.B.*, —— U.S. at ——, 117 S.Ct. at 566 ("The equal protection concern relates to the legitimacy of fencing · out would-be appellants based solely on their inability to pay core costs."). On the other hand, the due process analysis focuses on "the fairness of relations between the criminal defendant and the State." *Bearden*, 461 U.S. at 665, 103 S.Ct. at 2069; *see also M.L.B.*, —— U.S. at ——, 117 S.Ct. at 566 ("The due process concern homes in on the essential fairness of the state-ordered proceedings anterior to adverse state action.").

A definitive analytical framework has been elusive because "cases of this order 'cannot be resolved by resort to easy slogans or pigeonhole analysis.'" *M.L.B.*, —— U.S. at ——, 117 S.Ct. at 566 (quoting *Bearden*, 461 U.S. at 666, 103 S.Ct. at 2069). However, "[m]ost decisions in this area have rested on an equal protection framework," *Bearden*, 461 U.S. at 665, 103 S.Ct. at 2068, because "due process does not independently require that the State provide a right to appeal," *M.L.B.*, —— U.S. at ——, 117 S.Ct. at 566. Because equal protection and due process principles "converge" in the *Griffin* line of cases, the Supreme Court has explained that we should "inspect the character and intensity of the individual interest at stake, on the one hand, and the State's justification for its exaction, on the other." *M.L.B.*, —— U.S. at ——, 117 S.Ct. at 566.

■ Ultimately, the "basic question is one of adequacy of [a defendant's] access to procedures for review of his conviction, … and [this question] must be decided in light of avenues which [the defendant] chose not to follow as well as those he now seeks to widen." *MacCollom*, 426 U.S. at 326, 96 S.Ct. at 2092. The Fourteenth Amendment prevents states from "arbitrarily cut[ting] off the appeal rights for indigents while leaving open avenues of appeal for more affluent persons." *Ross*, 417 U.S. at 607, 94 S.Ct. at 2442. A state which provides appellate review, therefore, cannot adopt procedures which leave an indigent criminal defendant "entirely cut off from any appeal at all," by virtue of his indigency, *Lane*, 372 U.S. at 481, 83 S.Ct. at 771, or extend to such an indigent criminal defendant merely a "meaningless ritual" while the more affluent have a "meaningful appeal," *Douglas*, 372 U.S. at 358, 83 S.Ct. at 817. In short, the Fourteenth Amendment ensures that "indigents have an adequate opportunity to present [their] claims fairly within the adversary system." *Ross*, 417 U.S. at 612, 94 S.Ct. at 2444–2445.

■ The question presented in this case is whether the State of Maryland's system, which requires an indigent criminal defendant to apply for legal representation with the Public Defender's Office as a prerequisite to obtaining a free transcript in connection with an appeal, gives indigent criminal defendants an adequate opportunity to present claims on appeal. We believe it does.

The policy and the legislative intent of the Maryland Public Defender Act (the Act), Md. Ann.Code art. 27A, is

> to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal … proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal … proceedings before the courts of the State of Maryland, and to authorize the Office of the Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms.

*Id.* at § 1. Under the Act, the Public Defender is charged with the duty of providing legal representation to any indigent criminal defendant eligible to receive services under the Act, *see id.* at § 4(a), and must provide this representation in "all stages in the proceedings, including custody, interrogation, preliminary hearing, arraignment, trial, . . . and appeal." *Id.* at § 4(f). "Legal representation may be provided by the Public Defender, or, subject to the supervision of the Public Defender, by his deputy, by district public defenders, by assistant public defenders, or by panel attorneys." *Id.* at § 4(a).

■ The Act, however, does not deprive a state trial court from exercising its authority to appoint counsel:

> where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent entitled to representation under this article.

*Id.* at § 6(f). Indeed, a state trial court "must conduct its own inquiry as to whether the defendant qualifies for a court-appointed counsel" when the Public Defender's Office declines to represent the defendant. *Davis v. State,* 100 Md.App. 369, 641 A.2d 941, 947 (1994); *see also Thompson v. State,* 284 Md. 113, 394 A.2d 1190, 1198 (1978) ("[T]here is the clear duty imposed on the court, in order to decide whether it should appoint counsel, upon the Public Defender declining to do so, to make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided."). According to the *Davis* court, "[t]he necessity for this independent court evaluation stems from the judiciary's role as the 'ultimate protector' of the rights awarded under the Constitution, including the right to counsel." 641 A.2d at 947 (quoting *Baldwin v. State,* 51 Md.App. 538, 444 A.2d 1058, 1067 (1982)). Thus, if the Public Defender's Office cannot provide legal representation, due, for example, to a conflict of interest, an attorney is appointed by the Public Defender or the state trial court.

■ With respect to the costs related to presenting an appeal, including the preparation of a trial transcript, the Public Defender's Office shoulders the financial responsibility when it or a panel attorney represents an indigent criminal defendant. *See* Md. Ann. Code. art. 27A, § 1. In the event the Public Defender's Office declines to represent the defendant, Maryland Rule 1–325(b) requires the state trial court to order the State to pay the costs of the appeal, provided the Public Defender's Office is authorized to represent the indigent criminal defendant and the defendant is financially unable to pay the costs.

■ The facts of this case show that Miller would have received legal representation (via the Public Defender's Office or by order of the state trial court) and a trial transcript had he applied for legal representation with the Public Defender's Office. We do not believe it can be said, therefore, that a defendant in Miller's circumstances is denied meaningful access to the Maryland appellate courts simply because the State of Maryland requires the defendant to apply for legal representation with the Public Defender's Office. This is particularly true in view of the fact that the State of Maryland has a vested interest in ensuring that its funds are not abused or wasted and that appellate counsel is effective. At the time Miller declined to apply, he had the power to avail himself of the assistance of counsel and a trial transcript, but chose not to. The fact that Miller had these tools—legal representation and a trial transcript—at his disposal afforded him an adequate opportunity to attack his convictions on appeal. *Ross,* 417 U.S. at 616, 94 S.Ct. at 2446–2447.

As noted earlier, the basic question is the adequacy of an indigent's access to the state's appellate system. Unlike the indigents in *Griffin, Lane, Draper,* and *Burns,* Miller was not "entirely cut off from any appeal at all," by virtue of his indigency. *Lane,* 372 U.S. at 481, 83 S.Ct. at 771. Furthermore, unlike the indigent in *Douglas,* Miller was not provided with a "meaningless [appellate] ritual." *Douglas,* 372 U.S. at 358, 83 S.Ct. at 817. Rather, like the indigents in *Britt, Ross, MacCollom,* and *Bounds,* Miller was provided with adequate access to the

state adversary system—he would have had legal representation and a trial transcript had he applied for legal representation with the Public Defender's Office. Because Miller was provided adequate access to the State of Maryland's appellate system, his Fourteenth Amendment rights were not violated in this case.

It may be, as Miller suggests, that Bray, as Miller's trial counsel, was best suited to represent Miller on direct appeal. In this sense, Miller was less fortunate than a wealthy counterpart who could have employed the attorney of his choosing. But, as the Supreme Court noted in *Ross*, "[t]he question is not one of absolutes, but one of degrees." 417 U.S. at 612, 94 S.Ct. at 2445. As the Supreme Court explained in *Ross*:

> [T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process.

*Id.* at 616, 94 S.Ct. at 2447. Here, the State of Maryland may not have duplicated the legal arsenal of a wealthy defendant. Nevertheless, the State of Maryland has created a system in which indigent defendants can fairly present their claims to the appellate court. That is all the Fourteenth Amendment requires.

### III

■ Miller also contends that the state trial court's denial of his motion for a trial transcript pursuant to Maryland Rule 1–325(b) violated his right to counsel of choice. As his argument goes, Miller had a Sixth Amendment right to have Bray represent him on his appeal to the Court of Special Appeals of Maryland. We disagree.

■ The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The right to counsel confers on a state criminal defendant the absolute right to be represented by counsel at trial, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and, provided the state has appellate review, on a first direct appeal, *see Douglas*, 372 U.S. at 360, 83 S.Ct. at 818.[3]

■ The Sixth Amendment also protects a criminal defendant's right to counsel of choice. *See Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (noting that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment"). However, unlike the right to counsel, the right to counsel of choice is not absolute. *See United States v. Gallop*, 838 F.2d 105, 107 (4th Cir.1988); *see also Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 (recognizing that the "right to choose one's own counsel is circumscribed in several important respects"). Thus, a criminal defendant cannot "insist on representation by an attorney he cannot afford," *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697, because the protections of the right to counsel of choice do not extend "beyond 'the individual's right to spend his own money to obtain the advice and assistance of . . . counsel.'" *Caplin & Drysdale Chartered v. United States*, 491 U.S. 617, 626, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989) (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 370, 105 S.Ct. 3180, 3215, 87 L.Ed.2d 220 (1985) (Stevens, J., dissenting)); *see also Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 (noting that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"). Consequently, an indigent criminal defendant has no constitutional right to have a particular lawyer represent him. *Gallop*, 838 F.2d at

---

**3.** A state is not required to provide appellate courts or appellate review. *McKane*, 153 U.S. at

687–688, 14 S.Ct. at 914–915.

108; *see also Green v. Abrams,* 984 F.2d 41, 47 (2d Cir.1993) ("indigent defendant has no right to choose the particular counsel appointed"); *United States v. Bradley,* 892 F.2d 634, 635 (7th Cir.1990) (indigent criminal defendants "cannot pick and choose among members of the district court's bar"); *Thomas v. Wainwright,* 767 F.2d 738, 742 (11th Cir.1985) ("indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him").

Because the State of Maryland has appellate review, the Constitution requires that the State of Maryland provide indigent criminal defendants, like Miller, counsel on direct appeal. The State of Maryland provides this service through the Public Defender's Office. In the event that the Public Defender's Office cannot provide counsel to an indigent criminal defendant, due, for example, to a conflict of interest, counsel is appointed by the Public Defender's Office or the state trial court. Because the State of Maryland's statutory scheme provides indigent criminal defendants with counsel on direct appeal and Miller, on account of his indigency, had no constitutional right to demand that Bray, in particular, represent him on appeal to the Court of Special Appeals of Maryland, Miller's Sixth Amendment rights were not violated in this case.

## IV

For the reasons stated herein, the judgment of the district court is affirmed.[4]

*AFFIRMED.*

MURNAGHAN, Circuit Judge, dissenting:

Bernard Eric Miller was denied his right to appeal his criminal conviction because he could not afford to obtain, and the State of Maryland refused to provide, a trial transcript which was necessary to perfect his appeal. Since I believe Maryland's refusal to provide a transcript deprives Miller of the protections guaranteed by the U.S. Constitution, I respectfully dissent.

## I

Following his conviction for felony murder in Maryland state court, Miller attempted to obtain a transcript of his trial in order to perfect a direct appeal. As an indigent, Miller sought the transcript at state expense. The state refused to provide the transcript because Miller received legal representation from an attorney working on a *pro bono publico* basis instead of a Maryland public defender. Being indigent, had Miller accepted representation by a public defender, he would have been provided a transcript free of charge. In Maryland, a transcript is a necessity for lodging an appeal. Md. Rules 8–411, 8–413(a), 8–602(a).

Acknowledging Miller's right as an indigent to a transcript necessary for appeal purposes, the trial court nevertheless ruled that Maryland Rules 1–325(b) and 8–505 required an indigent to be represented by the state public defender's office in order to receive a transcript at state expense. Miller appealed to the Maryland Court of Special Appeals. The appellate court reversed on purely statutory grounds arguing that Maryland Rule 1–325(b) permitted an indigent defendant represented by *pro bono* counsel to receive at state expense the transcript necessary for appeal. *Miller v. State,* 98 Md.App. 634, 635 A.2d 1, 6 (1993). The Maryland Court of Appeals granted *certiorari* and reversed, holding that the Maryland Rules neither required the provision of a free transcript to Miller nor violated his constitutional rights. *State v. Miller,* 337 Md. 71, 651 A.2d 845, 846, 851–852 (1994). The court read Rule 1–325(b) as requiring an indigent to "apply to the Public Defender and be represented by, or refused representation by, that office before he can receive a free transcript." *Id.,* 651 A.2d at 849. The court explained that the rule uses the public defender as a "gatekeeper" to protect against the waste or abuse of state resources set aside for indigent defendants. *Id., 651 A.2d*

---

**4.** We need not decide whether this appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996), because Miller's

claims lack merit under pre-existing standards. Indeed, we are confident the AEDPA is of no help to Miller.

at 850. Under this interpretation, it is unlikely that many indigent defendants will be able to secure *pro bono publico* representation.

Miller sought reconsideration of the ruling, which denied him the transcript which would have been provided had he been represented by the public defender, arguing that a conflict of interest on the part of the public defender's office prevented him from accepting its services on appeal. He maintained that in the course of representing his codefendant in the underlying murder case, the public defender's office had accused Miller of being the driver of the car and thus, the murderer. Forcing him to accept public defender services on appeal, Miller argued, would therefore violate his constitutional protection against conflict-free legal representation.[1] The court of appeals denied the motion.

Miller next filed his federal *habeas corpus* petition which was rejected by the district court. Meanwhile, the Maryland Court of Special Appeals dismissed Miller's direct appeal because he failed to provide the relevant trial transcript.

## II

"The State may not erect a bar in the form of a transcript and filing costs beyond the petitioner's means." *M.L.B. v. S.L.J.,* —— U.S. ——, ——, 117 S.Ct. 555, 570, 136 L.Ed.2d 473 (1996) (Kennedy, J., concurring). Maryland's refusal to provide Miller with a transcript, preventing comparable justice afforded to the affluent who could pay and to the indigent accepting public defender representation who could not, created just such a bar, and the state's action violated Miller's rights under the Sixth and Fourteenth Amendments.

## III

### A

The U.S. Constitution does not obligate states to provide an opportunity to appeal in criminal cases. *McKane v. Durston,* 153 U.S. 684, 687, 14 S.Ct. 913, 914–915, 38 L.Ed. 867 (1894). If a state chooses to create such a right to review, however, it must employ procedures that satisfy due process and equal protection. *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985); *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956).

Moreover, if the state provides the right to appellate review, it may not "bolt the door to equal justice." *Griffin,* 351 U.S. at 24, 76 S.Ct. at 593 (Frankfurter, J., concurring in judgment). Failure to provide review to those who cannot afford it "means that many of them may lose their life, liberty or property because of unjust convictions." *Id.* at 19, 76 S.Ct. at 590. The review is especially inadequate when circumscribed by likelihoods of conflict of interest.

Drawing on these notions of fairness and equality, the Supreme Court has held that the Fourteenth Amendment guarantees "meaningful access to justice" in criminal cases. *Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985). All criminal defendants are entitled to "an adequate opportunity to present their claims fairly within the adversary system." *Ross v. Moffitt,* 417 U.S. 600, 612, 94 S.Ct. 2437, 2444–2445, 41 L.Ed.2d 341 (1974). "[J]ustice," the Court has explained, "cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake,* 470 U.S. at 76, 105 S.Ct. at 1092.

No one disputes the applicability of these long-standing principles to Miller's case, as Maryland has created a statutory right of direct appeal for convicted criminals. *See* Md.Code Ann., [Cts. & Jud. Proc.] § 12–301 (1995). The disagreement here concerns Maryland's method for providing transcripts to indigent appellants and the impact of that method on Miller. The state contends that its procedures ensure meaningful access consistent with the requirements of the Four-

---

1. Public defenders are compensated by the state and share facilities; as such they resemble a law firm. Therefore, public defenders, just as two partners or associates of a law firm cannot represent antagonistic positions.

teenth Amendment. Miller insists that they fall short.

There "is a flat prohibition against making access to appellate processes from even [the state's] most inferior courts depend upon the [convicted] defendant's ability to pay." *M.L.B.*, —— U.S. at ——, 117 S.Ct. at 561 (citing *Mayer v. Chicago*, 404 U.S. 189, 196–197, 92 S.Ct. 410, 416, 30 L.Ed.2d 372 (1971)). An individual indigent defendant is entitled, therefore, to a free transcript, which is provided to essentially all other indigents, i.e. those accepting public defender representation, when one is necessary to a decision on the merits of his criminal appeal. *Griffin*, 351 U.S. at 19–20, 76 S.Ct. at 591. In Maryland, appellate courts require the relevant trial records to accompany an appeal and have the discretion to dismiss an appeal lacking the necessary documents. *See* Md. Rules 8–411, 8–413(a), 8–602(a). Consequently, because a trial transcript is a necessary tool available to other appellants for a price, the state must provide a free copy to an indigent appellant unable to buy one. *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971); *Griffin*, 351 U.S. at 19–20, 76 S.Ct. at 591; *accord United States v. Talbert*, 706 F.2d 464, 469–470 (4th Cir. 1983); *United States v. Gaither*, 527 F.2d 456, 458 (4th Cir.1975), *cert. denied*, 425 U.S. 952, 96 S.Ct. 1728, 48 L.Ed.2d 196 (1976).

The Majority argues that Maryland may deny Miller's right to a transcript since Maryland provides an avenue, even if it is an imperfect one, by which Miller may obtain the transcript. In fact, the Supreme Court has repeatedly found that a state may not deny an indigent defendant his right to appeal by limiting his right to obtain a transcript necessary for his appeal. *Eskridge v. Washington State Bd. of Prison Terms and Paroles*, 357 U.S. 214, 215–216, 78 S.Ct. 1061, 1062, 2 L.Ed.2d 1269 (1958) (rejecting a state law provision giving a free transcript only when defendant could convince a trial judge that it would be in the interest of justice); *Lane v. Brown*, 372 U.S. 477, 481, 83 S.Ct. 768, 771, 9 L.Ed.2d 892 (1963) (rejecting statute which provided transcript to an indigent only upon the public defender's request); *Draper v. Washington*, 372 U.S. 487,

499, 83 S.Ct. 774, 780–781, 9 L.Ed.2d 899 (1963) (rejecting statute which provided a transcript only if trial judge determined that appeal was not frivolous).

The Majority cites *Britt*, 404 U.S. at 230, 92 S.Ct. at 435; *Ross*, 417 U.S. at 615–619, 94 S.Ct. at 2446–2448; *United States v. MacCollom*, 426 U.S. 317, 328, 96 S.Ct. 2086, 2093, 48 L.Ed.2d 666 (1976), and *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), for the proposition that the state may limit an indigent's right to a transcript. However, not one of those cases involves a direct appeal as of right, and not one involves a situation where the denial of the transcript completely denied a criminal defendant of his right to appeal his criminal conviction.

In *Britt*, the Court held that in preparing for a retrial, defendant was not entitled to a transcript of his first trial since defendant "had available an informal alternative which appear[ed] to be substantially equivalent to a transcript." 404 U.S. at 230, 92 S.Ct. at 435. Britt was neither completely denied his right to appeal nor significantly prejudiced by the court's action since he had an informal alternative which was "substantially equivalent." However, in the instant case, Miller was completely denied his right to appeal. There was no alternative to the transcript which was "substantially equivalent."

Furthermore, *Ross* and *MacCollom*, also cited by the Majority, involved collateral actions or discretionary appeals. They did not involve situations, as the case here, where the defendant was denied his right of first appeal. *Ross*, 417 U.S. at 615–619, 94 S.Ct. at 2446–2448 (discretionary appeal to North Carolina Supreme Court); *MacCollom*, 426 U.S. at 319, 96 S.Ct. at 2088–2089 (collateral relief).

Finally, in *Bounds*, the Court determined that a prisoner was not constitutionally entitled to access to a law library as long as an alternative system of providing constitutionally required services was provided. 430 U.S. at 830–831, 97 S.Ct. at 1499–1500. However, in Miller's case, the denial of the transcript completely deprived Miller of his

access to a transcript and thereby his right to appeal.[2]

Not one of the cases cited by the Majority for the proposition that the state may limit Miller's right to a transcript necessary to his appeal involves a direct appeal provided as of right. However, it is clear that if a state provides for direct appeal, it cannot place a barrier before someone simply because of lack of wealth. The state has done so in the instant case.

Moreover, the Majority opinion completely ignores a decision of one of our sister circuits holding that the state may not limit the right to a transcript only to appointed counsel or defendants proceeding *pro se*. *Fullan v. Commissioner of Corrections of N.Y.*, 891 F.2d 1007, 1011 (2d Cir.1989), *cert. denied*, 496 U.S. 942, 110 S.Ct. 3229, 110 L.Ed.2d 675 (1990). In *Fullan*, the Second Circuit rejected a statute similar to the Maryland one which provided a free transcript to an indigent person only when the counsel was assigned and denied it when the counsel was retained.[3] *Id.* at 1009–1010.

In fact, Miller's situation is far more compelling than that in *Fullan*. In *Fullan*, the defendant's family and friends paid for outside counsel for defendant's appeal. However, the defendant was indigent and could not afford to purchase a transcript. He sought the transcript at state expense. The state court denied his right to obtain the transcript at state expense finding that the contribution from friends and family toward retained counsel indicated that the defendant was not indigent. *Id.* at 1009. The Second Circuit reversed.

There is no doubt, however, about Miller's indigency. He has no alternative financial means for obtaining the transcript. His counsel is *pro bono*, and Maryland concedes that Miller is indigent. *Fullan* stands for the proposition that the state must provide a transcript to an indigent defendant even if that defendant is represented by counsel not appointed by the state. Since Miller's situation is far more compelling than Fullan's, I would apply the Second Circuit's decision to the instant case and find the Maryland Rule unconstitutional.

Even if the state was allowed to limit Miller's right to a transcript in some instances, the Maryland Rule at issue violates due process and equal protection because the state's justifications do not outweigh the individual interest at stake. *M.L.B.*, —— U.S. at ——, 117 S.Ct. at 566. In assessing the constitutional violations in the context of *Griffin* and the right to a transcript, the due process and equal protection analyses converge. *Id.* The Court must look at the "character and intensity of the individual interest at stake, on the one hand, and the state's justification for its exaction, on the other." *Id.* Since in the instant case, the state's justifications are less than compelling and somewhat arbitrary, and the defendant's interests are compelling, the statute is unconstitutional. The main factor is one of who shall represent Miller. On his approach, he shall be represented free of charge[4] while on the state's way of proceeding, the expense of the public defender must be borne by the state.

The Maryland Court of Appeals found the requirement that all indigent appellants who wish to receive a transcript must seek services through the public defender's office justified by the state's objective of protecting

---

2. In *M.L.B.*, the Court noted that

the *Griffin* requirement is not rigid. Alternative methods of reporting trial proceedings ... are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. Moreover, ... an indigent defendant is entitled only to those parts of the trial record that are germane to consideration of the appeal.

—— U.S. at ——–—— n.5, 117 S.Ct. at 561–562 n.5. Therefore, Maryland could have limited a defendant's right to the entire transcript, but it clearly cannot limit his right to those parts of the

record which are necessary for his appeal. It should be noted that Miller has only sought those parts of the transcript which are relevant to his direct appeal.

3. The New York Rule provided that "a typewritten transcript of such minutes [shall] be furnished without charge to the appellant's assigned counsel or, if appellant prosecutes the appeal *pro se*, to appellant." McKinney's 1989 New York Rule of Court § 671.3(b)(3).

4. Miller's counsel would appear *pro bono publico*.

the resources that it has set aside for indigent defendants. Ironically, the state argues that some expense is better than none. To that end, the state has also asserted a desire to encourage competent legal representation for indigent defendants and an administrative goal of easing recovery of costs from those indigent defendants who later acquire funds. While all of these reasons are certainly ones which Miller does not object to, they simply do not apply in the instant case and do not warrant unnecessary infringement upon an indigent's ability to exercise his constitutional rights.

In circumstances such as those at bar, where an indigent appellant has successfully retained counsel at no cost to himself or the state, the conservation rationale disappears. When there is no need for appointed counsel, the explanation that forcing all indigents to seek public representation will protect state resources is nonsensical. If properly applied, the rule will force all indigents seeking to pursue a direct appeal to become clients of the state public defender's office—even those capable of securing *pro bono* legal representation and imposing no financial burden on the state. Due simply to the increase in clients to be served, the state will end up needing more resources to carry out its duties. Casting a wider net by insisting that all indigent appellants proceed through the public defender system can therefore only cost—not save—state resources.

To require further, as the state does, that an indigent must accept *all* aspects of the government-funded legal assistance that relate to his appeal—even when he only needs or wants one particular service—is absurd. Instead of encouraging outside legal representation with the potential to conserve state assets, the rule only guarantees the expenditure of more government resources. Instead of creating a system whereby the state may only have to pay for production of a transcript or waive a filing fee, but will not bear the far greater cost of accompanying legal services, Maryland's rule ensures that the state will foot the entire bill. *See Fullan,* 891 F.2d at 1011 ("[T]he expense here would be greater if the State were required to pay the attorney's fee as well as the cost of the transcript.").

In addition, the state's argument that its countervailing government interest is financial was rejected by the Supreme Court in *M.L.B.,* —— U.S. at ——, 117 S.Ct. at 567. In *M.L.B.* the Court rejected the state's contention that providing a transcript in parental status termination cases placed a financial burden on the state. The Court held "in the tightly circumscribed category ... appeals are few, and not likely to impose an undue burden on the State." *Id.*

The financial burden on the State of Maryland from the case at bar is even less burdensome than that in *M.L.B.* In the instant case, Miller is actually saving the state money by not using the public defender. The only cost to the state is the cost of the transcript, which even the state concedes it would have to pay if Miller accepted representation by the public defender. Therefore, providing a transcript to an indigent defendant who is represented *pro bono publico* does not place an undue burden upon the state.

The state's related argument that it seeks to ensure reimbursement of its expenditures is weak. It is illogical to assume that any additional funds that the state might recover by forcing all indigents seeking to appeal under the auspices of the public defender would outweigh or even equal the increased amount it will end up spending in order to provide full legal representation for its extra clients. Again, with such an all-or-nothing rule, the state can only lose money.

Moreover, the state argues that by requiring *pro bono* attorneys to apply to the public defender's office or by requiring defendants to use public defenders, the statute guarantees that indigent defendants will receive competent legal representation. Again, the state's motivation of providing competent legal representation for indigents is worthy, but its related actions here rest on an unproven, if not faulty, supposition which renders them arbitrary. The state presumes that an appeal handled outside the public defender's supervision is more likely to be frivolous or mishandled. That assertion is

unsubstantiated by the record. Therefore, it cannot serve as a valid reason for interfering with the constitutional rights of Miller or any other indigent not receiving public defender representation. Moreover, the desire to curb frivolous appeals cannot justify any prerequisite to a direct appeal unless it is uniformly applied to indigents and non-indigents alike. *See Rinaldi v. Yeager,* 384 U.S. 305, 310–311, 86 S.Ct. 1497, 1500–1501, 16 L.Ed.2d 577 (1966); *Draper,* 372 U.S. at 499, 83 S.Ct. at 780–781; *Douglas v. California,* 372 U.S. 353, 357–358, 83 S.Ct. 814, 816–817, 9 L.Ed.2d 811 (1963). "When an indigent is forced to run [the] gauntlet of a preliminary showing of merit, the right to appeal does not comport with fair procedure." *Douglas,* 372 U.S. at 357, 83 S.Ct. at 816.

Finally, there are many valid reasons for promoting, not punishing, *pro bono* representation on appeal. One would expect all states to encourage poor defendants to accept offers of free legal representation from competent attorneys outside the public defender's office. Clearly, allowing *pro bono* representation can only benefit Maryland's overburdened and under-funded legal services system by supplementing its resources at no extra cost. In addition, it would emphasize the state's need and desire for volunteer legal representation. *See Mallard v. United States Dist. Court for Southern Dist. of Iowa,* 490 U.S. 296, 310, 109 S.Ct. 1814, 1823, 104 L.Ed.2d 318 (1989) ("[I]n a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills *pro bono publico* is manifest."). The way to accomplish these goals is to accommodate, not to penalize, *pro bono* legal representation.

**B**

Miller's next contention is that the Maryland statute violates his Sixth Amendment right to counsel of choice. A criminal defendant has a constitutional right to counsel of choice.[5] *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *United States v. Corporan–Cuevas,* 35 F.3d 953, 956 (4th Cir.1994). Grounded primarily in the Sixth Amendment right to effective assistance of counsel, the right protects the general freedom "to select and be represented by one's preferred attorney." *Wheat,* 486 U.S. at 159, 108 S.Ct. at 1697. While that right is not absolute, the Supreme Court has explained that there is always a "presumption in favor of [a defendant's] counsel of choice." *Id.* at 164, 108 S.Ct. at 1700.

The state contends that the right to counsel of choice neither continues on appeal nor applies to indigents. But that is not right. Because the assistance of an attorney is one of the "raw materials integral to the building of an effective defense," *Ake,* 470 U.S. at 77, 105 S.Ct. at 1093, the Supreme Court has repeatedly affirmed that the Fourteenth Amendment's promise of meaningful access entitles an indigent to the effective assistance of counsel on appeal. *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 436, 108 S.Ct. 1895, 1900–1901, 100 L.Ed.2d 440 (1988). We have recognized that the right to counsel of choice "is premised on respect for the individual," and characterized it as "an essential element" of the right to counsel. *United States v. Mullen,* 32 F.3d 891, 895 (4th Cir.1994) (citation omitted). Because I discern no reason for withholding that important component of the fundamental right to counsel on appeal, I would decline to do so

---

5. The State advances the proposition that an indigent has no right to counsel of his own choosing. In fact, every circuit court and the U.S. Supreme Court has recognized that a criminal defendant has a qualified right to counsel of choice. *See, e.g., United States v. Inman,* 483 F.2d 738, 739–40 (4th Cir.1973) ("The Sixth Amendment right to counsel includes ... the right of any accused, if he can provide counsel for himself by his own resources or through the aid of his family or friends, to be represented by an attorney of his own choosing."), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974). The state further argues that there is no constitutional right to self-representation on appeal, and thus no right to counsel of choice. We find that argument weak as well, for as the Third Circuit has observed, the Supreme Court notes in *Wheat* that the right to counsel of choice is not a species of the right to self-representation. *See Fuller v. Diesslin,* 868 F.2d 604, 608 (3rd Cir.) (citing *Wheat,* 486 U.S. at 159 n. 3, 108 S.Ct. at 1697 n. 3), *cert. denied,* 493 U.S. 873, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989).

here.[6]

Since "a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant," *Wheat,* 486 U.S. at 159, 108 S.Ct. at 1697, the right to counsel of choice does not extend to an indigent receiving public representation, but does apply to an indigent able to secure *pro bono* counsel. *Caplin & Drysdale Chartered v. United States,* 491 U.S. 617, 624–25, 109 S.Ct. at 2651, 2651–2652, 105 L.Ed.2d 528 (1989). The state has conceded that Miller needed a transcript in order to receive adequate appellate review and that, as an indigent, he qualified for state-funded services. The state has further acknowledged that Miller was denied a free transcript solely because he received legal representation outside the auspices of the public defender's office.

By interpreting Rule 1–325(b) to require that he apply for public defender services in order to receive a free transcript, the state denied Miller his counsel of choice, treated him differently solely because of his indigency,[7] and ultimately deprived him of "adequate and effective appellate review." Miller was presented with a Hobson's choice whereby, in order to exercise his constitutional right to a transcript necessary for his appeal, he must forfeit his right to the attorney of his choice for no compelling reason.

Indeed, the state's interpretation of Rule 1–325(b) as mandating application to the public defender's office forced Miller to choose between his secured counsel and the necessary trial record. Although he had an attorney at no cost to the state, Miller was told he must give up that attorney in order to receive a free transcript. When he insisted on retaining his *pro bono* counsel, he was denied the transcript. The state court then dismissed his appeal due to the missing transcript. It is thus abundantly clear that, in Maryland, an indigent seeking a tran script for appeal has only one route available, and that route—seeking public defender representation—requires forfeiting another constitutional right. Forcing a criminal defendant to surrender one constitutional right "in order to assert another" is "intolerable." *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).[8]

We previously have found it impermissible to compel a civil litigant to forego some constitutional rights in order to assert others. *See Tomai–Minogue v. State Farm Mut. Auto. Ins. Co.,* 770 F.2d 1228, 1232 (4th Cir.1985). It is even more egregious to subject a criminal defendant to such a choice.[9] I agree with the Third Circuit that

> [a] defendant in a criminal proceeding is entitled to certain rights and protections which derive from a variety of sources. He is entitled to all of them; he cannot be forced to barter one for another. When the exercise of one right is made contingent upon the forbearance of another, both rights are corrupted.

*United States ex rel. Wilcox v. Johnson,* 555 F.2d 115, 120 (3rd Cir.1977) (finding that conditioning the exercise of the right to testify upon waiver of the right to counsel is an impermissible infringement upon both rights).

Forcing an indigent to choose between two rights guaranteed by the Constitution results in the denial of one right or the other. Imposition of that dilemma upon Miller thus

---

**6.** Neither the Supreme Court nor any of our sister circuits appears to have held otherwise. *See, e.g., United States v. Friedman,* 849 F.2d 1488, 1490 n. 5 (D.C.Cir.1988) (assuming, without deciding, that the right to counsel of choice applies to the first appeal as of right), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1020, 112 L.Ed.2d 1101 (1991).

**7.** An affluent defendant would not have to accept representation by the public defender.

**8.** This is especially true, in cases such as the case at bar, where there is a conflict of interest between the public defender and the defendant. In such cases, the public defender may not be an acceptable choice for the defendant.

**9.** The circumstances here appear especially pernicious because Miller has offered a particularly compelling reason for refusing public defender representation. The fact that the state has procedures in place for assigning to panel attorneys cases in which the public defender's office has a conflict of interest does not justify forcing that option upon an indigent who has available the free services of another attorney. The lawyer's integrity and ability in the instant case have been in no way disparaged.

affronts our notions of basic fairness. But even if it did not, the state must provide a legitimate reason for burdening Miller's ability to exercise his constitutional rights. Conditions imposed on an indigent's ability to obtain a free transcript cannot be arbitrary and unreasonable, but must "comport with fair procedure." *MacCollom,* 426 U.S. at 324, 96 S.Ct. at 2091 (quoting *Douglas,* 372 U.S. at 357, 365, 83 S.Ct. at 816, 820–821); *see also Lane,* 372 U.S. at 485, 83 S.Ct. at 774 (voiding state law that arbitrarily granted transcripts to indigents only at the public defender's request). The state may deny the right only "to serve some compelling purpose," *United States v. D'Amore,* 56 F.3d 1202, 1204 (9th Cir.1995) (internal quotations omitted), and at the very least, must provide a "strong governmental reason" for burdening an individual's ability to exercise the right, *Caplin & Drysdale,* 491 U.S. at 631, 109 S.Ct. at 2655; *see also United States v. Monsanto,* 491 U.S. 600, 616, 109 S.Ct. 2657, 2666–2667, 105 L.Ed.2d 512 (1989) (testing pretrial restraining order for arbitrary interference with defendant's opportunity to retain counsel).

As discussed in the previous section, Maryland's questionable reasons for denying Miller a transcript simply do not outweigh the heavy burdens the Maryland Rule places on Miller's constitutional rights.

## IV

The State of Maryland's refusal to supply Miller with a transcript to perfect his appeal, though generally making them available to other indigent defendants, violates Miller's constitutional rights. Maryland Rule 1–325(b) requires an indigent criminal defendant with legal representation to forfeit his counsel of choice in order to obtain a transcript needed for appeal. Thus, for no compelling reason, an indigent seeking to appeal his conviction is forced to choose between his constitutional rights in a way that a wealthier defendant is not. That outcome cannot be judged consistent with the guarantee of meaningful access to justice. The Maryland Rule is unconstitutional and Miller is entitled to a transcript and an opportunity to appeal his conviction and sentence.

The Supreme Court recently stated in *M.L.B.* that "[i]n States providing criminal appeals ... an indigent's access to appeal, through a transcript of relevant trial proceedings, is secure under our precedent." Since I believe that the court's opinion in the case at bar places the very security of a defendant's right to a transcript at risk, I respectfully dissent.

K.K. HALL and MICHAEL, JJ., join in this dissent.